## In re COMPUTERVISION CORPORATION SECURITIES LITIGATION.

### MDL No. 964.

United States District Court, D. Massachusetts.

Nov. 22, 1994.

---

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Richard D. Greenfield, Greenfield & Chimicles, James R. Malone, Jr., Haverford, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Morris I. Glassman.

Glen DeValerio, Berman, DeValerio & Pease, Boston, Roberta D. Liebenberg, Mager, Liebenberg & White, Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs Lily Moss, Monica Morheim.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs Fred Werner, Larry O. Tietz, Anthony R. Caire.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Stephen I. Rabin, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs Mary Ann Mahoney, Noel Edelson, Leah Edelson, Frank R. Scala, Anna V. Scala, Byron Morach.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Lester L. Levy, Wolf, Popper, Ross, Wolf & Jones, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Eli Ballan.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Steven O. Sidener, Law Offices of David B. Gold, San Francisco, CA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Perry Gantmen.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Daniel Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Leon Sicular.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Marquerite R. Goodman, Wynnewood, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Robert Bassman.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Richard Kane.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Daniel W. Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiff Faramarz Elghanian.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio &

Pease, Boston, MA, Steven E. Angstreich, Levy, Angstreich, Finney, Baldante & Mann, Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs Nicholas Depace, Marilyn Depace.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, Lee Squitieri, Abbey & Ellis, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs David Roberts, Leonard Brown, Devon Management, Melvin Klein, Profit Sharing Plan of Eugene J. Bass, P.A., Michael K. Simon, Barnett Stepak.

Thomas G. Shapiro, Shapiro, Grace & Haber, Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, John Halebian, Wechsler, Skirnickarwood, Halebian & Feffer, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Sonem Partners, Ltd.

Peter J. MacDonald, Jeffrey B. Rudman, Hale & Dorr, Boston, MA, for defendants Computervision Corp., Russell E. Planitzer, John J. Shields, Harvey A. Wagner, Anthony N. Fiore, Jr.

James J. Hagen, Simpson, Thacher & Bartlett, New York City, for defendants Shearson Lehman Bros., Inc., Donaldson Lufkin & Jenrette Securities Corp., First Boston Corporation, Hambrecht & Quist, Inc., Lehman Bros.

Dennis M. Kelleher, Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for defendants Norman A. Bolz, John F. Cunningham, Julie T. Katzman, Lawrence L. Landry, Andrew C.G. Sage.

### *MEMORANDUM AND ORDER*

YOUNG, District Judge.

This is a consolidated class action on behalf of persons who purchased Computervision Corporation ("Computervision") securities between August 14, 1992, when notes and stock were first offered, and September 29, 1992, when Computervision announced substantial third quarter losses which were later quantified at $88,100,000.[1] After the announcement, Computervision's stock plummeted 30% in one day to $6.25, or almost half of the initial $12 offering price. The Corrected Supplemental Consolidated Amended Complaint ("Complaint") alleges violations of sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C.A. §§ 77k–77l (1988) and negligent misrepresentation based on the Prospectus,[2] which is alleged to have been false and misleading, and from which material facts were allegedly omitted. The defendants—Computervision; its individual officers and directors who signed the registration statements filed with the Securities Exchange Commission in connection with the offering; and a defendant class of over fifty underwriters who sold the Computervision securities—counter that the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim where (1) the Prospectus made full disclosure of the allegedly omitted information and particular risk factors, and (2) the strict pleading standards of Rule 9(b) allegedly have not been met. At a hearing on November 23, 1993, the Court granted the Motion to Dismiss the section 12(2) claim as to the defendant outside directors, and took the remaining matters under advisement.

### Framework for Analysis

As it must, the Court accepts all the factual allegations of the 39–page Complaint as true and makes all reasonable inferences in favor of the plaintiffs. *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986). "Although [the] plaintiff[s] did not attach a copy of the offering materials to [their] complaint, [the] defendants submitted the [Prospectus] with their motion[] to dismiss. This

---

1. Eighteen separate actions have been consolidated. Fifteen were originally filed in this District, and three in the Southern District of New York from which they were transferred pursuant to a Multidistrict Litigation order for consolidated pretrial proceedings in this Court. 28 U.S.C. § 1407.

2. The plaintiffs and defendants consider the separate stock and notes prospecti as essentially identical for all material purposes and have referred to them collectively as the "Prospectus." The Court adopts this shorthand reference to both. All particular references herein are to the Stock Prospectus.

step was proper and did not convert the motion to dismiss into a motion for summary judgment." *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991). *See Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.) *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) (" 'when [a] plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading' ") (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327 at 489 [1969] ).

■ When an action based on federal law is transferred pursuant to an order on multidistrict litigation, the transferee district court follows the law of its own circuit. *Menowitz v. Brown,* 991 F.2d 36, 40–41 (2d Cir.1993); *In re Litig. Involving "Sea Barge 101",* 772 F.Supp. 707, 711 (D.Puerto Rico 1991) (Fuste, J.). This Court thus applies the law of the First Circuit.

### The Governing Law

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, provides that every signer and underwriter may be held liable for a registration statement which "includes untrue statements of material facts or fails to state material facts necessary to make the statements therein not misleading." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 208, 96 S.Ct. 1375, 1388, 47 L.Ed.2d 668 (1976). Section 12(2) provides that any person who offers or sells a security by means of a prospectus can likewise be held liable for material untruths and omissions. 15 U.S.C. § 77*l*(2).

### The Alleged Misstatements

■ "The central inquiry in determining whether a prospectus is materially misleading under both Section [12(2) ] and Section 11 is ... 'whether defendants' representations, *taken together and in context,* would have [misled] a reasonable investor' about the nature of the investment." *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759,

761 (2d Cir.1991) (citation omitted) (emphasis added).

■ Simply put, this Complaint never explicitly alleges that Computervision's prospectus made any specific false statements. "Although the complaint quotes at length from the [Prospectus], it ... does not even try to explain how any of the challenged statements were untrue." *Loan v. FDIC,* 717 F.Supp. 964, 967 (D.Mass.1989) (Tauro, J.) (dismissing section 12(2) claim). *See also Haft v. Eastland Fin. Corp.,* 755 F.Supp. 1123, 1128 (D.R.I.1991) ("[p]laintiffs have only 'chosen to assert vaguely that a false and misleading impression was created' ") (citation omitted).

Nor does the Complaint effectively allege any misleadingly optimistic statements. The only allegedly "optimistic" statement the Complaint identifies as specifically misleading is taken from the Prospectus' "Summary Unaudited Pro Forma Consolidated Financial Data"; it shows gains in Computervision's "Operating income" and "Income from continuing operations" for the first six months of 1992 over the 1991 year totals. Prospectus, at 7. The Complaint alleges that "[b]y juxtaposing the positive results for the first two quarters of 1992 with the statements that the Company was refocusing on its higher margin software business, the Prospectuses distorted Computervision's earnings trends, masking the fact that the two quarters of profits did not, in reality, portend an immediate turnaround." Complaint, at ¶ 43. It is the Complaint's portrayal of the Prospectus, however, which distorts reality. It fails to highlight any statements within the Prospectus which represent—or which could lead one reasonably to infer—that Computervision was on "an immediate turnaround," or "was on the verse (sic) of a successful year and was a strong turnaround candidate" as alleged. Complaint, at ¶¶ 43, 45. On the contrary, the Prospectus is replete with cautionary language; [3] even its modestly posi-

---

**3.** For example, while the Complaint at ¶ 45(b) excerpts the following from the Prospectus as follows:

> Software revenue, however, increased 5% period over period *despite the recessionary environment.* CADDS software revenue, which ac-

counted for approximately 73% of total software revenue for the first six months of 1992, increased 10% from the corresponding period of 1991. CAD/CAM services and other revenue, excluding foreign exchange, increased slightly as a result of growth in software main-

tive statements are tempered by substantial amounts of negative information. At the start of its "Investment Considerations" section, for example, the Prospectus conspicuously warns potential investors that "[a]n investment in the securities being offered by this Prospectus involves a high degree of risk[.]" It goes on to state that "... the Company expects to incur a net loss for [the third quarter of 1992]." Prospectus, at 12, 15.

The Court rules, therefore, that the representations made in the Prospectus, which include multiple "no assurance" warnings and which clearly "bespeak caution," are not misleading as matter of law, with a single exception. *See Polin v. Conductron Corp.*, 552 F.2d 797, 807 n. 28 (8th Cir.), *cert. denied* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977) (holding that disclosure language bespeaking caution cannot underlie an action alleging fraud); *Romani*, 929 F.2d at 879; *I. Meyer Pincus & Assoc.*, 936 F.2d at 763 (dismissing § 10b–5 and § 11 claims based on the "Bespeaks Caution Doctrine"); *In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.*, 7 F.3d 357, 371–77 (3d Cir.1993), *cert. denied sub nom., Gollomp v. Trump*, —— U.S. ——,

114 S.Ct. 1219, 127 L.Ed.2d 565 (1994) (same); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). *See also* Royce de R. Barondes, *The Bespeaks Caution Doctrine: Revisiting the Application of Federal Securities Law to Opinions and Estimates*, 19 Journal of Corporation Law 243 (Winter 1994) (analyzing the Bespeaks Caution Doctrine).

This single exception involves alleged omission [9]. After carefully reviewing the Prospectus, the Court rules that the alleged omission [9], *see* n. 4, *infra*—"that the terms of Computervision's recapitalization were far inferior to the Company [sic] than what could be obtained from an unaffiliated third party" (Complaint, at ¶ 52[h] )—sufficiently alleges that Computervision's Prospectus made a false statement about those recapitalization terms when it said that "[t]he Company believes that its negotiations, with the assistance of its financial advisors, were conducted with affiliated parties on an arms' length basis, and that the terms of the Recapitalization are no less favorable to the Company than could be obtained from an unaffiliated third party." Prospectus, at 29. This single alleged untrue statement of material fact is, therefore, actionable as a false statement.

tenance revenues. (Prospectus, at 36) (emphasis added);

the actual paragraph in the Prospectus begins as follows:

*Total CAD/CAM revenue for the first six months of 1992 decreased* $21,952 *or* 5% *as product revenue decreased* $22,048 *or* 8% *and services revenue remained relatively constant from the corresponding period in 1991. Product revenue decreased despite a favorable year over year foreign exchange impact of* approximately $3,300 *while services revenue was unfavorably affected by foreign exchange of* approximately $1,200. *Domestic and international CAD/CAM product revenue for the first six months of 1992 decreased* 5% *and* 8% *respectively from the corresponding period of 1991. The continuing recessionary environment in the U.S., Western Europe (particularly Germany) and Japan, particularly among the industries in which the Company has a strong presence, and the delayed release of CADDS 5 (Release 2.0), resulted in customers delaying product purchases. These economic conditions as well as the Company's unbundling strategy have led to a 16% hardware revenue decline.* (Prospectus, at 36) (emphasis added).

Moreover, the "Summary Unaudited Pro Forma Consolidated Financial Data," mentioned above, is prefaced with cautionary language in the first paragraph which includes the following:

The Company historically has experienced a seasonal decline in revenue in the first and third quarters of each fiscal year ... Therefore, *the results of operations for the six months ended June 28, 1992 are not necessarily indicative of the results to be expected for the entire year.* (Prospectus, at 7) (emphasis added).

In addition, the statements that Computervision is refocusing on its higher margin software business are balanced with cautionary language where they appear. The Complaint itself at ¶ 42 quotes the Prospectus as follows:

**Increased Reliance on Software Business**

Over the last two years, the Company has focused its resources on its higher margin CAD/CAM software business, and has discontinued all hardware manufacturing operations. Although the Company continues to offer hardware manufactured by third parties to its customers as part of its integrated CAD/CAM product offerings, *its hardware margins have been adversely affected* by the decline in margins relating to industry standard platforms, and *the Company expects that this trend will continue.* The Company's objective is to replace declining hardware revenues and margins with sales of higher margin CAD/CAM software products. *No assurance can be given that the Company will be successful in achieving this objective.* (Prospectus, at 12) (emphasis added).

### The Alleged Omissions

The alleged material omissions have given the Court more pause.[4]

The Court has already ruled that alleged omission [9] is actionable as a false statement. The central inquiry in determining whether a prospectus is materially misleading because of a non-disclosure is whether there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). As pointed out by the defendants, however, the alleged omissions [1], [3–5], and [7–8] were effectively disclosed in the Prospectus.[5] *See* Defendants' Memorandum in Support of their Motion to Dismiss the Complaint, Appendix A.

Moreover, the defendants had no duty to project the third quarter or full-year results in the Prospectus, as the plaintiffs alleged in omission [2]. *See Klein v. Maverick Tube Corp.*, 790 F.Supp. 68, 70 (S.D.N.Y. 1991), *aff'd*, 969 F.2d 1041 (2d Cir.1992) (dismissing Section 11 and § 12[2] claims, where class action plaintiff "essentially alleges that because [the Company] announced lower earnings on April 15, 1991, it should have disclosed these results one month earlier in its prospectus" issued March 19, 1991). As for alleged nondisclosure [6], namely, that management's attention was diverted from operating the Company to offering the stock, "[f]ailing to disclose possible mismanagement

4. The alleged omissions in the Complaint are:
[1] "known uncertainties affecting the Company's results of operations, such as the continued softness in the domestic and European economies ..." ¶ 51;
[2] that "the Company was, in fact, expecting—and/or should have known that there would likely be—a substantial net loss for the third quarter of 1992 and it was becoming increasingly likely that Computervision's 1992 results would be far below the Company's plan for the year" ¶ 52(a);
[3] "that the demand for Computervision's products and services was rapidly deteriorating" ¶ 52(b);
[4] "that the unbundling process ... was beset with software development problems that were materially increasing the Company's research and development costs and materially decreasing sales revenue as potential customers waited out the debugging of the development problems" ¶ 52(c);
[5] "the Company purchased $120 million of hardware from its largest supplier which was 25% less than its own targets for such hardware purchases, thus adversely impacting its integrated systems sales" ¶ 52(d);
[6] "that Computervision's financial condition and results, at the time of the Offering, were being negatively affected by the diversion of management's attention from the day-to-day operations of the Company to the Offering itself" ¶ 52(e);
[7] "that the Company had ... severely cut its domestic and foreign workforce ..." ¶ 52(f);
[8] "that Computervision's workforce was still excessive based on current sales and a layoff of more than 10% of the workforce would be effected shortly following the Offering" ¶ 52(g);
[9] "that the terms of Computervision's recapitalization were far inferior to the Company than what could be obtained from an unaffiliated third party" ¶ 52(h);
[10] "that Shearson Holdings had previously attempted, unsuccessfully, to refinance its $500 million loan to Computervision through third parties" ¶ 52(i); and
[11] "that Shearson was sustaining the offering prices by instructing its brokers to give preferential treatment to certain customers on other, more attractive deals" ¶ 52(j).

5. For example, the Prospectus discloses, *inter alia*:

"[s]ince the acquisition, the economic situation has deteriorated worldwide and the minicomputer industry, in particular, has experienced a substantial sales decline" (Prospectus, at 20); major customers have been "adversely affected by the recent worldwide economic recession" and "marked slow-down in defense spending" (Prospectus, at 12–13); "the Company expects to incur a net loss for [the third quarter of 1992]" (Prospectus, at 15); the related total service revenue "has declined significantly over the past several years" and Computervision "expects this decline to continue" and not be "fully offset" by alternate services (Prospectus, at 14); "[t]otal 1991 CAD/CAM revenue decreased ... 7% from 1990 as product revenue decreased ... 9% while services and other revenue decreased ... 2%" (Prospectus, at 39); "the delayed release of CADDS 5 [software product enhancement] ... resulted in customers delaying product purchases.... the Company's unbundling strategy ha[s] led to a 16% hardware revenue decline" (Prospectus, at 36); "the Company is continuing to expand ... its network of independent dealers and value added resellers" (Prospectus, at 12); "[t]he Company will eliminate the majority of the business unit's existing workforce ... during the third and fourth quarters of 1992" (Prospectus, at 38). *See also supra*, note 3.

or incompetence does not state a federal securities law claim." *Haft*, 755 F.Supp. at 1131. Nondisclosure [10], which involves Computervision's unsuccessful attempts to refinance and also alleges mismanagement or incompetence, is equally unactionable. In light of the Prospectus' specific cautionary language about Computervision's financial instability, nondisclosure [10] is also immaterial under the "bespeaks caution" doctrine.[6] Thus, these allegedly omitted facts—which the plaintiffs say foreshadowed the third quarter losses—were in fact disclosed, are immaterial, or are unactionable as matter of law. The last remaining alleged nondisclosure, [11], which regards secret deals, is clearly a conclusory allegation of fraud; it cannot survive the strict pleading requirements of Fed.R.Civ.P. 9(b), since it does not plead sufficient facts. *See infra.*

■ Although no fraud claim is pleaded *per se* in the Complaint, in the First Circuit the particularity requirement of Rule 9(b) applies where "fraud lies at the core of the action." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985).

It is the allegation of fraud, not the "title" of the claim that brings the policy concerns of the First Circuit to the forefront. If a defendant is accused of fraud, his reputation may be damaged. A defendant facing such allegation may be pressured into a settlement merely to avoid the costs of litigation even in the absence of any wrongdoing.

*Haft*, 755 F.Supp. at 1133. Pursuant to the First Circuit's concern regarding allegations of fraud, several courts in this circuit have already applied the strict pleading standards of Rule 9(b) to actions brought pursuant to sections 11 and 12(2) where the complaint "sounds in fraud." *See, e.g., Lucia v. Prospect Street High Income Portfolio, Inc.*, 769 F.Supp. 410, 416–417 (D.Mass.1991) (Mazzone, J.) (Rule 9(b) applied to such claims where "it is clear that fraud, not negligence, lies at the core of the complaint"); *Haft*, 755 F.Supp. at 1132–33 (Rule 9(b) applied to § 11 claim "based on allegations of fraud"); *In re Elscint, Ltd. Sec. Litig.*, 674 F.Supp. 374, 384 (D.Mass.1987) (mem.) (Keeton, J.) (action under § 11 sufficiently analogous to actions under § 10(b) and Rule 10b–5 for Rule 9(b) to apply). *But see Loan v. FDIC*, 717 F.Supp. 964, 968 n. 9 (D.Mass.1989) (Tauro, J.) ("Section 12(2) ... imposes liability based on a seller's negligence and does not require proof of scienter ... [so] Rule 9(b)'s particularity requirement does not apply to § 12(2) because no fraud must be alleged or proven").

■ Even though no fraud claim has been made, the Complaint "sounds in fraud." *Haft*, 755 F.Supp. at 1126. For example, the Complaint alleges, and Counts I–III incorporate by reference, *inter alia*, that after Computervision was acquired, DR Holdings (and

---

**6.** For example, the Prospectus states:

**Substantial Leverage and Debt Service**
... Following the Recapitalization, the Company will, despite an increase in stockholder equity and a decrease in indebtedness and interest expense, remain substantially leveraged in relation to its stockholder equity.

\* \* \* \* \* \*

The degree to which the Company is leveraged could have important consequences to holders of the Company's Common Stock and Notes, including the following: (i) the Company's ability to obtain additional financing in the future for working capital, capital expenditures, acquisitions, general corporate purposes or other purposes may be impaired; (ii) a substantial portion of the Company's cash flow from operations must be dedicated to service its indebtedness; (iii) the Company's Amended Credit Agreement and the Notes will contain restrictions on the Company's ability to pay dividends and impose

other operating and financial restrictions; (iv) the Company will be more leveraged than most providers of similar products and services, which may place the Company at a competitive disadvantage; and (v) the Company's significant degree of leverage could make it more vulnerable to changes in general economic conditions.... unexpected declines in the Company's future business, increases in interest rates or the inability to borrow additional funds for its operations, if and when required, would impair the Company's ability to meet its debt service obligations and therefore have a materially adverse effect on the Company's business and future prospects.... In addition, the Company believes that because it is currently highly leveraged, it is perceived as a financially unstable business. The Company believes that this perception has had an adverse effect on the Company's competitive position. There can be no assurance that the Recapitalization will ameliorate this perception.
Prospectus, at 13.

Shearson Holdings, its main financer) "learned that [Computervision's] financial performance and prospects were extremely weak." Complaint ¶ 33. "Faced with ever-increasing financial risk, Shearson Holdings and DR Holdings sought to bail out from their investments in Computervision by dumping the Company's stock and causing the Company to issue Notes to an unsuspecting public. To that end, defendants arranged to refinance the Company by taking it public on August 14, 1992, in the Offerings." Complaint ¶ 35. "[I]n order to give the offerings a coloration of legitimacy and arm's-length pricing and to prop up the immediate aftermarket prices, Shearson manipulated the market for Computervision securities with secret promises and inducements to customers to participate in the Offerings." Complaint ¶ 38. "Notwithstanding the optimistic picture of the Company painted in the Prospectuses, the Company was actually ... expecting a substantial net loss for the third quarter of fiscal year 1992." Complaint ¶ 47. "None of the Individual Defendants or [the underwriters] made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Stock and Notes Registration Statements were true or that there was no omission of material facts required to be stated therein or necessary to make the statements made therein not misleading." Complaint ¶ 64. These are clearly allegations of fraud perpetrated on the investing public, so the particularity requirements of Rule 9(b) apply.

"It is well settled that Rule 9(b) requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation." *Romani*, 929 F.2d at 878. Moreover, "[a]lthough a plaintiff need not specify the circumstances or evidence from which fraudulent intent could be inferred, the complaint must provide some factual support for the allegations of fraud." *Id.* The First Circuit has

been especially rigorous in demanding such factual support in the securities context to minimize the chance "that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence."

*Id.* (quoting *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288 [1st Cir.1987] ). The Complaint here, however, is devoid of any supporting facts about any conspiracy to defraud investors; [7] any manipulation of the market; any reckless disregard for false or misleading statements in the registration materials; and of any obvious signs that Computervision would sustain greater third-quarter loss than the Prospectus anticipated.

For the foregoing reasons, the federal securities claims are dismissed pursuant to Rule 12(b)(6) and Rule 9(b), except as to the alleged false statement regarding arms-length recapitalization as set forth in omission [9], which alone survives as to all defendants. [8]

---

7. The only facts which are pled to support the allegations of a bailout by Shearson Holdings and DR Holdings are that

DR Holdings, whose principle asset was its shares of [Computervision], was facing possible bankruptcy and American Express, the parent of Shearson Holdings, was forced to post a $55 million write off in October 1991 on its equity investment in DR Holdings. Moreover, due to the Company's continuing financial deterioration, the Loan Agreement [between Shearson and DR Holdings and Computervision] was amended on December 20, 1991, to provide for interest 'payable in kind', *i.e.*, in additional notes instead of cash, through May 1993, at rates as high as LIBOR [London Interbank Offered Rate] plus 16.74%. .

Complaint ¶ 34; *see* John Downes & Jordan E. Goodman, *Dictionary of Finance and Investment* 236 (3rd ed. 1991) (defining LIBOR as the rate

that most creditworthy international banks dealing in Eurodollars charge each other for large loans). These facts, relating to events the previous year, are insufficient to "support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by defendants." *Romani*, 929 F.2d at 878.

8. The Court does not dismiss the § 12(2) claim against the Defendant Underwriter Class at this time because it is not evident from the Complaint whether each underwriter qualifies as a "seller" within the meaning of § 12(2). *See, e.g., Miller v. New American High Income Fund*, 755 F.Supp. 1099, 1105 (D.Mass.1991) (Mazzone, J.). Computervision and any individual officers not explicitly dismissed from the § 12(2) claim by the Court's previous Order of November 23, 1993, however, are hereby dismissed from that count

### Negligent Misrepresentation

The common law claim of negligent misrepresentation raises the thorny choice of law issue in the context of this multidistrict litigation. The parties do not address the issue, however, nor does this Court. Under the common law of both New York and Massachusetts, the plaintiffs cannot proceed against Computervision or the individual defendants, because they have failed sufficiently to plead privity or its equivalent between themselves and Computervision or the individual defendants. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir.1993) (negligent misrepresentation claim properly dismissed under New York law where no privity, or intentional direction of misrepresentation at particularized group, alleged between plaintiff stock purchasers and corporation and its corporate principals), *cert. denied sub nom. Ross v. ZVI Trading Corp. Employees' Money Purchase Pension Plan,* — U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *Steiner v. Unitrode Corp.*, 834 F.Supp. 40, 46 (D.Mass.1993) (Wolf, J.) (negligent misrepresentation claim dismissed under Massachusetts law where no privity, or actual knowledge of the plaintiffs' reliance, alleged between proposed plaintiff class of stock purchasers and corporation and its corporate principals); *Berliner v. Lotus Dev. Corp.*, 783 F.Supp. 708, 713 (D.Mass.1992) (Tauro, C.J.) (same). The negligent misrepresentation claim is, therefore, dismissed as to all the defendants except for the defendant underwriter class which is alleged to have sold Computervision securities directly to members of the plaintiff subclass. Complaint ¶ 25.

SO ORDERED.

since there is no sufficient allegation that they were "sellers" within the meaning of § 12(2). *See In re Westinghouse Sec. Litig.*, 832 F.Supp. 948, 987 (W.D.Pa.1993) (dismissal of § 12(2) claim warranted where insufficient facts alleged establishing that each defendant sold or solicited the sale of securities to individual plaintiffs).