**In re WEBSECURE, INC. SECURITIES LITIGATION.**[1]

Civ.A. Nos. 97–10662–GAO, 97–11045–GAO, 97–11110–GAO, 97–10829–GAO.

United States District Court, D. Massachusetts.

Sept. 24, 1998.

**1.** Civil Action Nos. 97–10662–GAO; 97–10828–GAO; 97–10829–GAO; 97–11045–GAO; and 97– 11110–GAO.

Thomas G. Shapiro, Shapiro, Grace & Haber, Gretchen M. Van Ness, Boston, MA, Marc I. Gross, Michael D. Schwartz, Pomerantz, Levy, Hauder, Block & Grossman, New York City, Robert C. Schubert, Schubert & Reed, LLP, San Francisco, CA, for Plaintiffs.

Scott P. Lopez, Richard M. Egbert, Law Office of Richard Egbert, Boston, MA, Paul Markham, Melrose, MA, Evan Slavitt, Risa G. Sorkin, Gadsby & Hannah, LLP, Steven N. Fuller, Deborah L. Thaxter, Glenn M. Martin, Tristin L. Batchelder, Peabody & Brown, Roscoe Trimmier, Lisa M. Ropple, Robert G. Jones, Ropes & Gray, Peter J. MacDonald, Jeffrey B. Rudman, Daniel Tighe, Hale & Dorr, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

This is an action brought on behalf of a putative class of persons who purchased securities of WebSecure, Inc. ("WebSecure")

between December 5, 1996 and February 21, 1997. WebSecure, now in bankruptcy, offered security services for business transactions over the Internet. Five separate actions filed by various purchasers of WebSecure common stock and warrants were consolidated by this Court on November 26, 1997, and on December 29, 1997, the plaintiffs filed a consolidated amended complaint. All the defendants except for Centennial, Inc. moved to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b). For various reasons, the only motion that needs to be decided is that of the underwriter defendants Coburn & Meredith, Inc. and Shamrock Partners, Inc.[2] Their motion is brought pursuant to Fed.R.Civ.P. 12(b)(6) (failure to state a claim) and Fed.R.Civ.P. 9(b) (failure to satisfy). For the reasons articulated below, the Court DENIES the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 9(b). The motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED in part and GRANTED in part, with leave to amend.

### FACTUAL BACKGROUND

In considering a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the nonmoving party. *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of this motion the facts set forth below are assumed to be true.

On December 5, 1996, WebSecure conducted an initial public offering ("IPO") of 1.15 million shares of common stock and an equal number of warrants. The gravamen of the plaintiffs' complaint is that the Registration

---

**2.** The action against WebSecure has been stayed by the pendency of the bankruptcy proceedings. The Court has been advised that the other defendants, with the exception of the underwriters, have arrived at a negotiated resolution of the plaintiffs' claims and do not now press their motions.

Statement and final Prospectus were materially false and misleading in violation of the §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77k, 77*l*, 77*o*, § 10(b), and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) and 78t. The claims that are alleged against the underwriter defendants are based on §§ 11 and 12(a)(2) of the 1933 Act.

The plaintiffs claim that the Prospectus was materially misleading in two significant ways. First, they assert that the Prospectus failed to warn investors that Centennial Technologies, Inc. ("Centennial"), a company with which WebSecure had a number of close business relations, was actually a "false enterprise." Second, they say that the Prospectus provided inaccurate and incomplete information about a supposed software licensing agreement that WebSecure had entered into with an Irish company called Manadarin Trading Company Limited ("Manadarin").

With regard to the first, the Prospectus revealed that Centennial had loaned WebSecure substantial sums of money and that it played a critical role in financing WebSecure's day-to-day operations. In addition, the Prospectus identified Centennial both as a major customer and as a major supplier for WebSecure. Prior to the IPO, Centennial beneficially owned 23% of WebSecure's common stock. In addition, WebSecure's President, Robert Kuzara, and its CFO, Carole Ouellette, had been members of Centennial's management before becoming associated with WebSecure. Centennial was identified in the WebSecure Prospectus as a "related" company.

The plaintiffs allege that Kuzara and Ouellette knew of the sham nature of Centennial[3] but failed to reveal it in the WebSecure Prospectus. Moreover, the plaintiffs allege that "the primary purpose for WebSecure's IPO was to provide further funds for [Centennial CEO] Pinez's fraudulent schemes through Centennial's sale of WebSecure stock in the IPO, the repayment of WebSecure's debt owed to Centennial from proceeds of the IPO, and the creation of a market for WebSecure stock...." Consolidated Am. Compl. ¶ 41.

As to the second area of misrepresentation, the Prospectus disclosed that WebSecure had entered into a software licensing agreement with Manadarin to develop and market three software programs. The Prospectus characterized the Manadarin software programs as being in the development stage; specifically, it said they were "incomplete" and had "not reached technological feasibility." Yet the report in the Prospectus that the license had been purchased for 2.5 million shares of WebSecure stock misled investors to think that the license had significant worth. In reality, the software did not even exist. The plaintiffs contend that the Prospectus failed to inform investors that the entire Manadarin transaction was a sham effected for the purposes of (i) creating the false impression that WebSecure had acquired valuable software and (ii) transferring 2.5 million shares of common stock of WebSecure to Pinez and the other parties controlling Manadarin for the purpose of facilitating the continued fraud of Pinez and his associates.

## DISCUSSION

"Sections 11 and 12(a)(2) are enforcement mechanisms for the mandatory disclosure requirements of the Securities Act of 1933." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1201 (1st Cir.1996). "Section 11 imposes liability on signers of a registration statement and on underwriters, among others, if the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir.1996) (quoting 15 U.S.C. § 77k(a)). Likewise, "[s]ection 12(2) provides that any person who 'offers or sells' a

**3.** Centennial's common stock rose by 630% in 1996, making it the single largest gainer for any stock listed on either the New York or the American Stock Exchange. Early in 1997 (after WebSecure's IPO), it was reported that Centennial's reported profits were, in fact, illusory and a sham, and the market value of Centennial's stock plummeted. Its Chief Executive Officer was indicted for securities fraud, as was Kuzara.

security by means of a prospectus or oral communication that contains a materially false statement or that 'omits to state a material fact necessary [in order] to make the statements, in the light of the circumstances under which they were made, not misleading' shall be liable to any 'person purchasing such security from him.'" *Id.* (quoting 15 U.S.C. § 77*l*(2)).

## I. Rule 9(b) Particularity Requirement.

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." "Fraud is not an element of a claim under either §§ 11 or 12(2)" of the 1933 Act. *Shaw,* 82 F.3d at 1223. Nevertheless, the First Circuit has said that when a plaintiff attempts to establish violations of Sections 11 and 12(a)(2) through allegations of a unified course of fraudulent activity, "the particularity requirements of Rule 9(b) would probably apply to the Sections 11[and] 12(2) ... claims." *Shaw,* 82 F.3d at 1223.

Here, the defendants argue that the plaintiffs' §§ 11 and 12(a)(2) claims "sound in fraud" but fail to meet the particularity requirements of Rule 9(b). They rely on language in the complaint which implies that statements made by WebSecure in its Prospectus regarding their relationship and regarding the Manadarin transaction were knowingly false, deceptive, and incomplete. For example, ¶ 41 of the Consolidated Amended Complaint alleges:

> [T]he primary purpose for WebSecure's IPO was to provide further funds for Pinez's fraudulent schemes through Centennial's sale of WebSecure stock in the IPO, the repayment of WebSecure's debt owed to Centennial from proceeds of the IPO, and the creation of a market for WebSecure stock so that Manadarin partners ... could unload their WebSecure shares ..., and thereby funnel more monies into Pinez's fraudulent schemes.

To the extent that such language "sounds in fraud," it does so only in relation to other defendants—WebSecure, Centennial, and the individual directors. There is no allegation that the underwriters themselves actually possessed the information about the sham nature of the various transactions. Even allegations that the underwriters possessed information they failed to disclose "cannot be thought to constitute 'averments of fraud,' absent any claim of scienter and reliance." *Shaw,* 82 F.3d at 1223. Nowhere in the complaint is there any allegation of scienter with regard to the underwriter defendants. Accordingly, the §§ 11 and 12(a)(2) claims do not "sound in fraud" as regards these defendants and so the particularity requirements of Rule 9(b) do not apply.

## II. Section 11 Standing.

■ The underwriters contend that plaintiffs lack standing to assert a claim against them under Section 11 of the 1933 Act. Citing several recent cases decided since the Supreme Court's decision in *Gustafson v. Alloyd Co.,* 513 U.S. 561, 564, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), the defendants assert that only plaintiffs who buy shares directly in the IPO can assert a claim under § 11, not plaintiffs who purchased shares in a subsequent, secondary market even if the subsequent sale is "traceable" to the Registration Statement and Prospectus at issue. The amended complaint alleges that

> [p]laintiffs and other members of the Class purchased the Company's common shares issued *pursuant to, or traceable to,* the defective Registration Statement and Prospectus and consequently, have been damaged by defendants' violations of §§ 11 and 15 of the 1933 Act.

Consolidated Am. Compl. ¶ 67 (emphasis added). Because the plaintiffs have only alleged that they have purchased their stock "pursuant to or traceable to" the defective Registration Statement, the defendants contend that the plaintiffs have not sufficiently alleged standing to bring a § 11 claim.

In response, the plaintiffs argue that the defendants' reliance on *Gustafson* to limit the scope of § 11 claims only to those who actually purchased their stocks in an original IPO is misplaced. So long as they can trace their shares to the original Registration Statement, plaintiffs argue that they have standing to bring a claim under § 11. The Court agrees with the plaintiffs.

In *Gustafson,* the Court held that only persons who purchased securities in a public offering by an issuer and its controlling shareholders may assert a claim under § 12(a)(2) of the Securities Act. The Court stated "[t]he intent of Congress and the design of the statute require that § 12(2) liability be limited to public offerings." *Gustafson,* 513 U.S. at 578, 115 S.Ct. 1061. Although *Gustafson* did not address whether § 11 claimants, like § 12(a)(2) claimants, must also have purchased their securities in a public offering in order to have standing, the defendants urge this Court to join a number of District Courts which have extended the Supreme Court's *Gustafson* holding to § 11 claims. *See In re Summit Med. Sys.,* 10 F.Supp.2d 1068, 1069–70 (D.Minn. June 29, 1998); *In re WRT Energy Sec. Litig.,* No. 96 CIV. 3610, 3611(JFK), 1997 WL 576023 at *6 (S.D.N.Y. Sept. 15, 1997); *Gould v. Harris,* 929 F.Supp. 353, 359 (C.D.Cal.1996); *Murphy v. Hollywood Entertainment Corp.,* No. CIV. 95–1926–MA, 1996 WL 393662, at *3 (D.Or. May 9, 1996); *Gannon v. Continental Ins. Co.,* 920 F.Supp. 566, 575 (D.N.J.1996); *Stack v. Lobo,* 903 F.Supp. 1361, 1375–76 (N.D.Cal.1995).

Other courts, however, have declined to extend *Gustafson* to apply to § 11. *See In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1119 (D.Nev.1998); *Lilley v. Charren,* 936 F.Supp. 708, 715 (N.D.Cal.1996); *Adair v. Bristol Technology Sys.,* 179 F.R.D. 126, 130–33 (S.D.N.Y.1998); *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 555 (D.Colo. 1998). The First Circuit has yet to rule on this particular issue, but prior to *Gustafson* the Court of Appeals had read § 11 to permit suits by those who had purchased a security after the original offering. *See Versyss, Inc. v. Coopers & Lybrand,* 982 F.2d 653, 656 (1st Cir.1992). In *Versyss,* the court went on to observe that because § 11 is "remarkably stringent where it applies," courts should take "some care" before extending § 11 beyond its normal reading. *Id.* at 657.

An excellent analysis of the problem is set forth in Judge Sweet's recent opinion in *Adair.* First, Judge Sweet noted that for thirty years the Second Circuit has accorded standing to any purchaser of securities who could trace the purchase to a particular Registration Statement or Prospectus regardless of whether the purchase was made in the course of the IPO. *Adair,* 179 F.R.D. at 130. Next, he analyzed *Gustafson,* the legislative history of § 11, and the statutory text, concluding that none supports the limited view of standing espoused by the defendants. This Court agrees with the *Adair* analysis and with its conclusions. To plead proper standing under § 11, a plaintiff may plead a purchase in the public offering itself or a purchase traceable to the offering and its Registration Statement.

### III. Section 12(a)(2) Claim against Shamrock Partners.

■ One of the underwriters, Shamrock Partners, argues that the § 12(a)(2) claim must be dismissed against it because the plaintiffs failed to allege that any of them purchased a security directly from Shamrock, as is required in order to meet the statutory definition of "seller" under 15 U.S.C. § 77*l*. "A person who 'offers or sells' a security may be liable under Section 12(2) to any person '*purchasing* such security *from* him.' " *Shaw,* 82 F.3d at 1214 (emphasis in original) (quoting 15 U.S.C. § 77*l*(a)(2)). In *Pinter v. Dahl,* 486 U.S. 622, 645, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court held that § 12(a)(2) liability is not limited to those who actually pass title to the suing purchaser. At the same time, it is clear that the 'purchase from' requirement of § 12 requires more than "a 'remote' involvement in a sales transaction or … mere 'participat[ion] in soliciting the purchase.' " Rather, a defendant must be directly involved in the actual solicitation of a securities purchase in order to qualify as a § 12 seller. *Shaw,* 82 F.3d at 1215. Furthermore, it is clear that a "bald and factually unsupported allegation that [a defendant] 'solicited' the plaintiffs' securities purchases is not, standing alone, sufficient." *Id.* at 1216; *see also Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1307 (10th Cir.1998).

■ Here, the amended complaint specifically alleges that plaintiffs Renzer and Snyder purchased shares of WebSecure from the defendant Coburn & Meredith. Consol-

idated Am. Compl. ¶ 16. The amended complaint does not allege that *any* of the plaintiffs purchased shares directly from Shamrock. The plaintiffs point to ¶ 18 of the amended complaint alleging that "[p]ursuant to the terms of the IPO, shares of WebSecure common stock and warrants were sold by the Underwriter Defendants directly to investors." They say that this general language is sufficient to encompass a claim against Shamrock. It is not. The Court need not decide here whether in a class action the complaint must necessarily plead which of the representative plaintiffs actually purchased stock from a particular underwriter. It is sufficient for the present to say that their amended complaint does not allege that any plaintiff—as distinct from any "investor"—purchased directly from Shamrock. Thus, this is a different case from *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 718 (3d Cir.1996) where the court found that allegations that the underwriters sold securities "directly to plaintiffs" sufficed for pleading purposes. While the plaintiffs have adequately alleged statutory seller status as against Coburn & Meredith, they have failed to do so against Shamrock Partners, and the § 12(a)(2) claim against Shamrock must be dismissed. The plaintiffs are granted leave to replead their § 12(a)(2) claims against Shamrock within twenty-one days to allege a "purchase from" Shamrock by at least one plaintiff.

*IV. Failure to Allege the Omission or Misrepresentation of Material Facts Subject to a Duty to be Disclosed under §§ 11 and 12(a)(2).*

■ To be actionable under §§ 11 and 12(a)(2), the alleged misstatements or omissions must be of *material* facts. *See, e.g., In re Computervision Corp. Sec. Litig.*, 869 F.Supp. 56 (D.Mass.1994), *aff'd sub nom. Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir.1996). "The central inquiry in determining whether a prospectus is materially misleading because of a non-disclosure is whether there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " *In re Compu-*

*tervision*, 869 F.Supp. at 62 (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Furthermore, it is a fixture in federal securities law that absent a duty to disclose, silence cannot be actionably misleading. *Shaw*, 82 F.3d at 1202.

■ Like the other claims in the suit, the §§ 11 and 12(a)(2) claims are based upon the alleged failure of the Prospectus to inform the investing public about the full nature of the relationship between Centennial and WebSecure, including that Centennial was a fraudulent company and the alleged omissions regarding the license agreement between Mandarin and WebSecure including failure to reveal that the software to be licensed from Manadarin was non-existent. The defendants contend that the facts allegedly omitted were not material was a matter of law because (1) the Centennial matters relate to another company, not WebSecure; (2) the Manadarin information pertained to future events and the securities laws do not hold parties liable for faulty prognostication; and (3) the defendants did not know the alleged facts.

As to the first, the Court is not convinced that there was no affirmative duty of these responses of disclosure about Centennial. The Court has previously noted that it might be an "expansion" or even a "stretch" to hold the defendants liable for details about companies other than WebSecure, such as Centennial. *See In re Websecure, Inc. Sec. Litig.*, No. 97–10662–GAO, 1997 WL 770414 (D.Mass. Nov. 26, 1997) (order denying preliminary injunction). The defendants cite a number of cases which they say show that the duty of disclosure is limited to firm-specific information. *See Shaw*, 82 F.3d at 1207; *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515 (7th Cir.1989); *In re Exabyte Corp. Sec. Litig.*, 823 F.Supp. 866, 871–872 (D.Colo.1993). Nonetheless, a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

As to the second, the defendants are correct that there is no duty to predict the

future; the duty to disclose material information relates to backward-looking, hard information, not to forecasts. *Glassman,* 90 F.3d at 631. However, the plaintiffs here have characterized the misrepresentations and omissions not as inaccurate forecasts of the future but rather as statements of current facts about WebSecure's business and assets as of the time of the IPO.

Finally, as to the third response of the defendants, it is settled that "to make out a *prima facie* case at the pleadings stage, Plaintiffs need only allege a material misstatement or omission. Neither knowledge nor reason to know is an element of a plaintiff's *prima facie* case." *Degulis v. LXR Biotechnology, Inc.,* 928 F.Supp. 1301 (S.D.N.Y.1996), and related cases, 1997 WL 20832, at *3 (S.D.N.Y. Jan. 21, 1997).

Whether plaintiffs will ultimately succeed on their §§ 11 and 12(a)(2) claims remains to be seen. On this challenge to the pleadings, however, the Court cannot say, as a matter of law, that success for the plaintiffs is impossible. As in most circumstances, here the disputes over the materiality of allegedly false or misleading statements must be reserved for the trier of fact. *Shaw,* 82 F.3d at 1217. Likewise, it is premature to decide as a matter of law whether the defendants had a specific obligation to disclose information of the type that the plaintiffs' amended complaint was omitted from the Registration Statement.

### CONCLUSION

For the reasons articulated above, therefore, the underwriter defendants' motion to dismiss the consolidated amended complaint pursuant to Fed.R.Civ.P. 9(b) is DENIED. The motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is DENIED in part; it is GRANTED with respect to the § 12(a)(2) claim against defendant Shamrock Partners only. The plaintiffs are granted leave to amend within twenty-one days to plead a more specific claim under § 12(a)(2) against Shamrock Partners.

IT IS SO ORDERED.