914 F.Supp. 717 (1996)
In re COMPUTERVISION CORPORATION SECURITIES LITIGATION.
MDL No. 964.
United States District Court, D. Massachusetts.
February 12, 1996.
*718 Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Richard D. Greenfield, Greenfield & Chimicles, Haverford, PA, James R. Malone, Jr., Haverford, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Morris I. Glassman.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Roberta D. Liebenberg, Mager, Liebenberg & White, Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Lily Moss, Monica Morheim.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Fred Werner, Larry O. Tietz, Anthony R. Caire.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Stephen I. Rabin, Rabin & Garland, New York City, for Mary Ann Mahoney, Noel Edelson, Leah Edelson, Frank R. Scala, Anna V. Scala, Byron Morach.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Lester L. Levy, Wolf, Popper, Ross, Wolf & Jones, New York City, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Eli Ballan.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Steven O. Sidener, Law Offices of David B. Gold, San Francisco, CA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Perry Gantmen.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Daniel Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Leon Sicular, Faramarz Elghanian.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Marguerite R. Goodman, Wynnewood, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Robert Bassman.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Richard Kane.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Steven E. Angstreich, Levy, Angstreich, Finney, Baldante & Mann, Philadelphia, PA, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Nicholas DePace, Marilyn DePace.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, Lee Squitieri, Abbey & Ellis, New York City, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for David Roberts, Leonard Brown, Devon Management, Melvin Klein, Profit Sharing Plan of the Eugene J. Bass, P.A., Michael K. Simon, Barnett Stepak.
Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, MA, John Halebian, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, Edith M. Kallas, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Sonem Partners, Ltd.
Peter J. MacDonald, Jeffrey B. Rudman, Hale & Dorr, Boston, MA, for Computervision Corp., Russell E. Planitzer, John J. Shields, Harvey A. Wagner, Anthony N. Fiore, Jr.
James J. Hagen, Simpson, Thacher & Bartlett, New York City, for Shearson Lehman *719 Brothers, Inc., Donaldson Lufkin & Jenrette Securities Corporation, First Boston Corporation, Hambrecht & Quist, Inc., Lehman Brothers.
Dennis M. Kelleher, Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for Norman A. Bolz, John F. Cunningham, Julie T. Katzman, Lawrence L. Landry, Andrew C.G. Sage.

MEMORANDUM
YOUNG, District Judge.
Following dismissal of all but a tiny sliver of their case,[1] and withdrawal of that sole surviving claim in the face of a motion for summary judgment, the plaintiff class of disgruntled investors in Computervision Corporation ("Computervision") moved for leave to file a so-called Second Amended Consolidated Class Action Complaint.[2] Treating the oppositions to that motion as cross motions to dismiss on futility grounds, the Court held a hearing on September 13, 1995, and issued an order dated September 20, 1995, denying the motion to amend and entering judgment on behalf of the defendants. This memorandum explains the reasoning behind the order.

I. Standard for Analysis
The parties disagree over the applicable standard for analysis of the motion to amend. The plaintiffs rely upon the "freely given when justice so requires" language of Rule 15(a) and insist that the Court's discretion does not permit denial of leave to amend without "substantial reason." The defendants argue that it is the plaintiffs, having largely lost a previous motion to dismiss and conceded defeat in a subsequent motion for summary judgment, who now must demonstrate that the proposed amendment is supported by "substantial and convincing evidence." See Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir.1994) (motion to amend filed during pendency of summary judgment motion) (quoting Torres-Matos v. St. Lawrence Garment Co., 901 F.2d 1144, 1146 [1st Cir.1990]). Although the Court is of the view that the Gold standard applies due to the lengthy prior proceedings in this case, the question is academic, as the plaintiffs cannot maintain this action under either standard.

II. Discussion

A. The Individual Defendants
There are two fundamental and fatal defects with the present incarnation of the plaintiffs' case. First, the complaint mischaracterizes Computervision's statements: the Company simply did not say what the plaintiffs say it said. The supposed actionable "representations" are in fact inferences drawn by the plaintiffs from isolated statements which are unreasonable (if not irrational and illogical) given the surrounding language and the documents in their entirety. Second, the claims, although superficially distinct from their predecessors, are essentially the same as those already held insufficient.
Once again, this version of the complaint attacks the public documents promulgated by Computervision in connection with its stock and note offerings of August 14, 1992. The plaintiffs claim that statements in those documents  prospectuses and registration statements  are actionable in three respects: (1) they were misleading in stating that the stock and the notes were "appropriately priced"; (2) they misrepresented that "backlog" was not material; and (3) the Company's treatment of certain of its products, CADDS 4X and CADDS 5, Release 2.0, was false and misleading. This memorandum will address these allegations seriatim.

1. "Appropriately Priced"
The plaintiffs categorize their initial attack as follows:
The Stock Prospectus was misleading in stating that the Stock had been appropriately *720 priced. The price of the Notes was also too high, causing their yields to be too low. The Stock Prospectus stated that among the factors considered in determining the initial public offering price were "estimates of the business potential and earnings prospects of the Company." By the time of the Offerings, however, those estimates were no longer valid. As of the date of the Offerings, the Company's revenues, bookings, visibility and backlog were substantially below the plan prepared by Computervision and reviewed by the underwriters in connection with their due diligence for the Offerings, as well as the Company's other internal plans.
Plaintiffs' Brief at 8-9. In other words, the projections and estimates employed by the Company and its underwriters in pricing the stock and notes were invalid, and known to be so, rendering the prices  reached only after "considering" the projections  misleading.
There are numerous flaws in the plaintiffs' reasoning. First, the Company never represented that the prices were "appropriate," whatever that means. Rather, the Company stated the following in its prospectus:
The initial public offering price was determined by negotiation among the Company, the Representatives[3] and the Lead Managers.[4] Among the factors considered in determining the initial public offering price, in addition to prevailing market conditions, was the Company's historical performance, estimates of the business potential and earnings prospects of the Company and market prices of and financial and operating data concerning comparable companies with publicly traded equity securities.
Prospectus at 82-83. The defendants correctly point out that if the above constitutes a representation that the initial price was "appropriate," investors would effectively have insurance against any decline in price, rendering their investments risk-free.
Even if the Court were to construe such language as some kind of warranty of the "correctness" or "soundness" of the initial price, the plaintiffs cannot show that the statement is in any sense false or misleading. The best the plaintiffs can muster is various scattered internal, non-public projections and sales indicators within the Company which differed from  and were bleaker than  those "considered" in reaching an initial price. The fact that the projections proved overly rosy, also relied on by the plaintiffs, in no way constitutes proof that parties involved did not consider "estimates of the business potential and earnings prospects."
The plaintiffs' claim may be reduced to one that the Company had a duty to make public its internal projections of its third quarter and full-year results. This claim mirrors omission [2] of the previous complaint  "the Company was, in fact, expecting ... a substantial net loss for the third quarter of 1992 and it was becoming increasingly likely that Computervision's 1992 results would be far below the Company's plan for the year"  which the Court has already held non-actionable because the Company had no duty to make such projections public. Computervision, 869 F.Supp. at 62. In other words, the "new" allegations regarding declining sales and Computervision's inability to fulfill its own internal plans are thinly veiled retreads of allegations already held insufficient.

2. Backlog
Next, the plaintiffs claim that the Prospectuses misrepresented "that backlog was not material."[5] To the contrary, they assert, opening backlog represented a material part of a quarter's sales, and the low opening backlogs for the second and third quarters significantly contributed to low revenues for those quarters. As indicators of *721 revenue, the plaintiffs maintain that backlog should have been disclosed. In support of this allegation, they rely on the following from the Prospectus:
Shipments are generally made within 30 days of receiving an order. In light of the short time between order and shipment of the Company's products, the Company generally has relatively little backlog at any given date, and the Company does not believe that backlog is representative of potential sales for any future period.
Prospectus at 55. The Company thus never said that backlog was "not material." Rather, it said that backlog was usually low and that it did not consider backlog an accurate predictor of sales for the subsequent quarter. The Company also disclosed in the Prospectus that a
substantial portion of the Company's orders and shipments typically occur in the last month of each quarter. Therefore ... unexpected delays or actions ... could result in significant quarterly fluctuations in the Company's operating results.
Id. at 14.
The plaintiffs are here engaged in a classic example of fallacious post hoc ergo propter hoc logic. They posit that because opening second- and third-quarter backlog was low, and then orders for those quarters were lower than expected or hoped, the former to some degree "caused" the latter, or at least portended ill. In essence, the plaintiffs are saying, "We believe low backlog portends low sales. You don't think that's necessarily so. Because there was both low backlog and low orders for these two quarters, we were right and you should have agreed with us and told us before it happened." If that is so, the plaintiffs were already equipped with the knowledge, disclosed by the Prospectus, that the Company had "relatively little backlog at any given date." Id. at 55. However, given the disclosed facts regarding the ordinary flurry of activity in the last month of each quarter and the possibility of "significant quarterly fluctuations," which the plaintiffs do not dispute, there is no evidence that the Company actually believed, contrary to the Prospectus, that backlog was "representative of potential sales for any given period."
The plaintiffs then assert that backlog "contributed substantially" to quarterly sales. As proof, they aver that backlog entering the second quarter accounted for 30% of the quarter's orders, and that beginning backlog of the third quarter accounted for about 21% of forecasted orders. Computervision, however, never said that backlog did not "contribute substantially" to quarterly sales; it merely questioned its reliability as an indicator. The percentages offered by the plaintiffs, and the significant 9% difference between them, harms rather than helps their case. The numbers merely demonstrate the quarter-to-quarter variation of backlog in relation to quarterly orders, justifying the Company's admonition that one who projects orders based on backlog does so only at his peril.
Nor have the plaintiffs demonstrated that the statement that "[s]hipments are generally made within 30 days of receiving an order" was false and misleading. The only proof offered to support this assertion is an analysis of a single week of the third quarter (Week 7) showing that 39% of the backlog was shipped in more than 30 days and 33% was shipped in more than 60 days, leaving a mere 28% shipped within 30 days. Once again, the plaintiffs mischaracterize the Prospectus, deleting the word "generally" and inserting the word "always" in its place. Isolating a single week in which the majority of orders were not filled within 30 days is insufficient to render the statement false and misleading, and does not constitute evidence that as of the effective date of the Prospectus, the Company did not generally make shipments within that time period. The existence of an exception does not necessarily disprove the validity of a rule.

3. CADDS 5
The plaintiffs allege that the Prospectuses were materially false and misleading in their disclosures regarding one of the Company's leading software products, CADDS 5, Release 2.0, in the following ways:
1. The Prospectus falsely stated that "commercial shipments" of CADDS 5, Release 2.0 had begun in June of 1992 when, in fact, the product had not been approved for *722 volume commercial shipment as of the effective date of the offerings and Computervision planned to ship another release (Release 2.01) to customers after the offerings to fix defects in Release 2.0.
2. The Prospectus mischaracterized CADDS 5 as an "up-grade" or "follow on version" of CADDS 4X when, in fact, CADDS 5 was so different that upgrading presented customers with obstacles tantamount to switching to an entirely new product.
3. The Prospectuses misrepresented that customers would likely use the CADDS 4X and CADDS 5 together or "in tandem" when, in fact, CADDS 5 customers could not do so because (1) CADDS 4X could not read or use the data or information for new parts created using CADDS 5; and (2) CADDS 5 had many technical problems and lacked many of the functions available on CADDS 4X.
4. The Prospectuses misrepresented CADDS 5 as a successful product commercially shipping in volume when, in fact: (1) CADDS 5 was still in early stages of development and was not ready for shipment as an "upgrade" or successor to the then successful CADDS 4X; (2) many customers were delaying purchases of CADDS 5 until later revisions; and (3) Computervision did not expect CADDS 5 to replace CADDS 4X for at least three to five years.
Once again, these allegations distort what the Company actually represented and closely resemble earlier dismissed claims. The Company's disclosures regarding the development and status of CADDS 5, as well as its interaction with CADDS 4X, were more than adequate, and the plaintiffs' tortured reading of the prospectus cannot overcome this fact. The Court has already approved Computervision's treatment of its CADDS' products in its prospectus, and will neither belabor nor revisit the issue here. See Computervision, 869 F.Supp. at 60-61 & n. 3.

B. Underwriter Defendants
The section 12(2) and negligent misrepresentation claims against the underwriter defendants also cannot stand as there are no actionable representations or omissions in this version of the complaint.

III. Conclusion
Once again, the plaintiffs have distorted reality, see Computervision, 869 F.Supp. at 60, in an attempt to recoup lost investments. The federal securities laws simply do not provide a remedy for the losses they have suffered given the facts and circumstances of this case.
NOTES
[1] See In re Computervision Corp. Sec. Litig., 869 F.Supp. 56 (D.Mass.1994). Familiarity with that opinion is presumed.
[2] Although the parties bicker over the number of complaints filed in this case and the proper name for the pleading now at issue  the defendants believe it to be the fourth amended complaint  suffice it to say that the plaintiffs have had extraordinary opportunities to state viable claims against the defendants and must live or die with the present version of the complaint.
[3] Shearson Lehman Brothers Inc., Donaldson, Lufkin & Jenrette Securities Corp., The First Boston Corp. and Hambrecht & Quist Incorporated acted as Representatives of the underwriters of the domestic offering.
[4] Lehman Brothers International Limited, Credit Suisse First Boston Limited, Donaldson, Lufkin & Jenrette Securities Corporation and Hambrecht and Quist Incorporated acted as Lead Managers of Computervision's international offering.
[5] "Backlog" apparently represents the dollar amount, on any given day, of orders received for which product has not yet been shipped.