**DECLUDE, INC. and DNSstuff, LLC, Plaintiffs,**

v.

**R. Scott PERRY, Defendant.**

**Civil Action No. 08–11072–NMG.**

United States District Court, D. Massachusetts.

Dec. 22, 2008.

Asha A. Awad, Eric D. Levin, Hinckley, Allen and Snyder, LLP, Boston, MA, for Counter Defendant/Plaintiffs.

Natalie U. Luongo, Steven T. Sager, Sager & Schaffer LLP, Westborough, MA, for Counter Claimant/Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

On June 25, 2008, plaintiffs Declude, Inc. ("Declude") and DNSstuff, LLC ("DNS"), companies which took their name from the software they produce, filed a complaint against software designer R. Scott Perry

("Perry"). Perry has denied the allegation against him and filed a counterclaim with respect to certain counts of which the counterclaim defendants have moved to dismiss.

## I. Background

This suit arises out of two software programs, known as "Declude Software" and "DNSstuff Software", developed by Perry in 2000. The Declude Software uses a particular kind of source code ("the Declude Source Code"), a verbatim copy of which is contained in the DNS Software ("the DNS Source Code").

As memorialized in the "Asset Purchase Agreement" dated April 9, 2004, Perry sold all the assets used in and associated with the Declude Software, including the Declude Source Code, to plaintiff Declude, which at that time was known as Computerized Horizons, LLC.[1] In consideration, Perry received $700,000, a four-year employment contract and royalties. The purchase price was paid in the form of a $60,000 deposit, a $265,000 payment at the closing and a promissory note for $375,000. The employment contract provides that Perry would serve as Director of Software Architecture of Declude and receive an annual salary of $125,000. It also contains a liquidated damages provision whereby Perry is entitled to a minimum of $500,000 for his employment so long as he is not terminated for cause or does not voluntarily resign.

Almost immediately, Declude failed to comply with the terms of the promissory note and subsequently defaulted on it. Moreover, in January, 2005, Perry resigned from his position at Declude. He alleges that, in fact, he was constructively discharged due to a hostile work environment created by Declude but he continued to provide services to the company even after he had officially resigned.

Pursuant to the "Asset Contribution Agreement" dated August 30, 2006, Perry sold the DNSstuff Software to DNS, a company organized at that time. Under that Agreement, Declude and Perry both received an "ownership stake" in DNS (consisting of 60,000 "Class A units" for Declude and 40,000 "Class A units" and 10,000 "Class B units" for Perry).[2] Contemporaneously, under a "Stock Subscription Agreement", Perry received one percent (1%) of the total issued and outstanding stock of Declude and, under a "Contribution Agreement", Declude agreed to provide certain services in support of DNS. Finally, Declude and Perry entered into an "Operating Agreement" with respect to the management of DNS.

The plaintiffs allege they discovered for the first time in January, 2008, that the Declude Source Code was copied into the DNS Source Code. Believing that they had, in effect, purchased from Perry the same source code twice, Declude and DNS brought suit alleging counts of copyright infringement, breach of contract, misrepresentation, conversion, unjust enrichment and conduct in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Perry denies all material allegations of the complaint and asserts numerous affirmative defenses and a ten-count counterclaim against the plaintiffs and three officers of Declude and DNS, namely, Charles K. Stefanidakis ("Stefanidakis"),

---

**1.** Computerized Horizons, LLC changed its name to Declude in April, 2005, but to avoid confusion, it will be referred to as Declude throughout this opinion, as it is in the complaint and counterclaim.

**2.** The Court presumes, without further information from the parties, that a "unit" is a share or some specific number of shares.

Arik Keller ("Keller") and Richard Person ("Person").

The counterclaim defendants, in turn, have filed a motion to dismiss Counts II, IV, V, VI and X of the counterclaim for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and/or for failure to meet the heightened pleading requirements of Fed. R.Civ.P. 9(b). Perry opposes that motion, which is now before the Court.

## II. *Legal Analysis*

### A. Legal Standard

▇▇▇ In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208. Mere "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" do not constitute sufficient allegations. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996) (citation and internal quotation marks omitted).

▇▇▇ In order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 9(b), a complaint alleging fraud or mistake must do so with particularity. Under that heightened standard, a plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made. *See Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir.2004). The purpose of that standard is three-fold:

(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations.

*New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir.1987).

### B. Application

#### 1. Count II

Count II of the counterclaim alleges that Declude breached express and implied provisions of its employment agreement with Perry by constructively discharging Perry and failing to pay him liquidated damages. Perry claims that he was forced to resign from his position at Declude because he was

forced to endure intolerable and hostile work conditions, including an excessive workload, impossible demands and deadlines, humiliation by the repeated assignment of menial tasks, and verbal abuse directed towards him by Stefanidakis.

Perry's employment agreement with Declude states, in the two relevant parts,

(1) The Employer employs Employee as Director of Software Architecture to perform such acts and duties for the Employer that are customarily per-

formed in connection with and related to that position. . . .

5(b) Upon the Termination Date, unless such results from Discharge for Cause or a Termination by Employee pursuant to Paragraph 5(a)(ii), the Employer shall pay the Employee a lump sum equal to (i) any Base Salary accrued through the Termination Date, and (ii) Five Hundred Thousand Dollars ($500,000) less all Base Salary prior paid to or for the benefit of Employee through the Termination Date.

The counterclaim defendants allege that Perry *resigned* from Declude (constituting a "Termination by Employee") and that, therefore, he has no claim for liquidated damages. They present three arguments in support of their contention that Count II should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6).

■ First, they claim that Perry has failed to demonstrate a breach of an express provision of the employment contract because the employment agreement does not prohibit Declude from assigning deadlines or menial tasks to Perry. Perry responds that having to perform menial tasks, such as providing technical support, are not duties befitting a Director of Software Architecture. Neither party has specified exactly what are the duties of such a Director. Although the duties of a "director", in the typical sense of the term, usually involve complex tasks, many jobs, even high-ranking ones, inevitably require some amount of menial work. Without more information, the issue of whether the assignment of menial work to Perry constitutes a breach of the employment agreement cannot be resolved at this stage of the case.

■ The counterclaim defendants' second argument for dismissal is that Perry has failed to demonstrate a breach of De-

clude's implied covenant of good faith and fair dealing. They argue that such an obligation extends only to contractual duties actually contained in the agreement and does not impose additional duties. Perry responds that the counterclaim defendants' definition of the covenant would make it a mere redundancy of the underlying contract and, moreover, the covenant can be breached even in the absence of a breach of the express terms of the contract.

Although Perry is correct, the requirements of the covenant are "circumscribed by the obligations in the contract". *See Speakman v. Allmerica Financial Life Ins.*, 367 F.Supp.2d 122, 132 (D.Mass. 2005). Massachusetts courts have not yet determined whether constructive discharge is sufficient to support a claim for breach of the covenant. *Vonachen v. Computer Associates Intern., Inc.*, 524 F.Supp.2d 129, 137 (D.Mass.2007). Therefore, Count II may not rest entirely upon a breach-of-the-covenant theory.

■ The counterclaim defendants' final argument is that Perry has failed to allege facts sufficient to support a claim of constructive discharge. They contend that constructive discharge usually occurs in employment discrimination cases and that courts have refused to find constructive discharge in situations considerably worse than Perry's. *See Mercado–Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 52 (1st Cir.2005) (humiliation from having to respond to a new supervisor); *Nunez–Soto v. Alvarado*, 918 F.2d 1029, 1030–31 (1st Cir.1990) (receiving an inferior job title and losing decision-making power, previously considerable responsibility, an office and a parking space).

Perry rejects Declude's argument but cites to only one case in which the First Circuit Court of Appeals reviewed a situation which *might* be considered construc-

tive discharge. *See Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986) (alleged age discrimination due to demotion, promotion of a younger person, repeated inquiries about retirement and threats of increased work hours if plaintiff did not resign).

 Constructive discharge is found only when working conditions are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign". *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977). An objective standard applies such that the employee's personal, unreasonable sensitivities cannot be taken into account. *Calhoun,* 798 F.2d at 561. The conditions must be "so difficult as to be intolerable". *GTE Prods. Corp. v. Stewart,* 421 Mass. 22, 653 N.E.2d 161, 169 (1995). Constructive discharge may not arise from a "loss of prestige, humiliation, and embarrassment . . . unless extreme", *Mahoney v. Driscoll,* 727 F.Supp. 50, 52 (D.Mass.1989), or from "mere dissatisfaction with the nature of assignments [or] criticism of an employee's performance", *GTE Prods. Corp.,* 653 N.E.2d at 169.

Humiliation and verbal abuse, which Perry alleges to have suffered, can, however, constitute constructive discharge in some circumstances. *See Aviles–Martinez v. Monroig,* 963 F.2d 2, 6 (1st Cir.1992) (being chastised for not doing work, being blamed as irresponsible and being scolded and ridiculed on a daily basis). Furthermore, a determination of constructive discharge necessarily involves a more detailed examination of the facts or events surrounding an employee's departure than is currently possible. Therefore, dismissal of Perry's claim based on constructive discharge would be premature at this time.

### 2. Count X

 Count X alleges that the counterclaim defendants engaged in a series of unfair and deceptive practices in violation of the Consumer Protection Act, M.G.L. c. 93A, § 11. They have moved to dismiss that count pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that Chapter 93A extends only to "commercial" transactions and not to employment relationships or inter-enterprise disputes. *See Szalla v. Locke,* 421 Mass. 448, 657 N.E.2d 1267, 1269 (1995); *Manning v. Zuckerman,* 388 Mass. 8, 444 N.E.2d 1262, 1266 (1983).

Perry responds that Count X of his counterclaim does not arise out of his interactions as an employee or stockholder of Declude and/or DNS but rather from his arms-length transactions with those companies such as the sales of Declude and DNS Software. Because the law is clear that Chapter 93A claims may not be based on non-commercial transactions, however, to the extent that Count X is based on such transactions, it will be dismissed.

 The counterclaim defendants also move to dismiss Count X on the basis that it fails to meet the heightened pleading requirement of Fed.R.Civ.P. 9(b). As an initial matter, it should be noted that Chapter 93A, to the extent it does not involve fraud, is not subject to a heightened pleading requirement. *U.S. Funding, Inc. of Am. v. Bank of Boston,* 28 Mass.App.Ct. 404, 551 N.E.2d 922, 925 (1990). Moreover, Perry identifies no fraudulent statement whatsoever in Count X.

The only allegedly fraudulent statements pled with particularity in the entire complaint are 1) a representation made by Keller on April 5, 2007, that Declude had invested $323,000 in DNS and 2) a representation made by Stefanidakis on August 26, 2007, that Perry had to reduce his equity interest in DNS by 10% to compensate Declude for the $323,000 investment

(both of which statements caused Perry to divest himself of 5% of his interest in DNS before he learned that the $323,000 investment had never actually been made). The complaint clearly establishes that both of those statements relate to Perry as a DNS shareholder (indeed, the section of the complaint describing the statements is entitled "Declude's Misrepresentation in Connection with the Reduction of Mr. Perry's DNSstuff Interest"). Perry has, accordingly, pled no statement *arising out of a commercial transaction* with particularity. Therefore, to the extent that Count X is based upon alleged fraud arising out of a commercial transaction, it will be dismissed.

The counterclaim defendants also contend that the remainder of Count X, i.e. the part based on their alleged unfair practice pertaining to Perry's business transactions, should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because it does not rise to the requisite level of rascality required under M.G.L. c. 93A, § 11. That argument is compelling because Perry alleges nothing more than mere breach of contract and copyright infringement. *See Henry v. Nat'l Geographic Soc'y*, 147 F.Supp.2d 16, 23 (D.Mass.2001) (mere copyright infringement does not constitute rascality); *Duclersaint v. Fed. Natl. Mortgage Ass'n*, 427 Mass. 809, 696 N.E.2d 536, 540 (1998) (mere breach of contract is not the "stuff" of which a Chapter 93A claim is made).

For all of the above reasons, Count X will be dismissed in its entirety.

### 3. Counts IV, V and VI

Counts IV, V and VI of the counterclaim allege, respectively, that 1) DNS and Declude breached the Operating Agreement, 2) Stefanidakis, Keller and Person breached their fiduciary duty and 3) distributions were made to Declude (and not to Perry) in violation of that agree-

ment. The counterclaim defendants respond that Perry has failed a) to demonstrate why the transactions at issue were fraudulent or b) to particularize the role of each counterclaim defendant in the alleged misconduct. They contend that Perry makes broad claims without pleading any supporting facts such that the counterclaim defendants have no way of articulating an answer. Therefore, they assert that Counts IV, V and VI are conclusory allegations of fraud that must be dismissed pursuant to Fed.R.Civ.P. 9(b).

Perry responds that Fed.R.Civ.P. 9(b) only applies to causes of action for which fraud is a required element, unlike those in the counts at issue. Furthermore, he contends that his complaint contains sufficient detail to put the counterclaim defendants on notice of his counterclaims.

The counterclaim defendants correctly assert that any claim sounding in fraud must satisfy the requirements of the heightened pleading standard regardless of what label the pleader assigns to it. *See In re Computervision Corp. Sec. Litig.*, 869 F.Supp. 56, 63 (D.Mass.1994). A claim "sounds in fraud" if fraud lies at the core of the action. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir.1996). The First Circuit Court of Appeals has stated that "[t]he hallmarks of fraud are misrepresentation or deceit". *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 215 F.3d 182, 191 (1st Cir.2000).

With respect to Count IV, the counterclaim defendants argue that the statements "siphoning off profits, making discriminatory Class A distributions, and paying unauthorized and excessive management fees" and "mak[ing] distribution to some, but not all, the Class A shareholders" are allegations of fraud. Whether or not such statements are allegations of fraud, they constitute only some of Per-

ry's allegations with respect to his claim of breach of the Operating Agreement. Thus, it cannot be said that Count IV "sounds in fraud" thereby requiring particularity. It will, accordingly, withstand the motion to dismiss.

With respect to Counts V and VI, respectively, the counterclaim defendants argue that the statements:

1) diverting funds from DNSstuff to Declude for [the] personal benefit [of Stefanidakis, Keller and Person] to the detriment of Mr. Perry, charging excessive management fees to DNSstuff, [and] participating in undocumented and unauthorized financial manipulations, and

2) [that DNS made distributions] to some, but not all, the Class A shareholders [that were] illegal and unauthorized

are allegations of fraud. Neither of those allegations appears to involve misrepresentation or deceit and thus do not constitute fraud. They are not, therefore, subject to the heightened pleading standard of Fed. R.Civ.P. 9(b). Accordingly, Counts V and VI will not be dismissed.

### ORDER

In accordance with the foregoing, the counterclaim defendants' motion to dismiss (Docket No. 11) is, with respect to Count X, **ALLOWED**, and is otherwise **DENIED**.

So ordered.