STATE OF MAINE                          BUSINESS AND CONSUMER COURT
KENNEBEC, ss                            DOCKET NO. BCD-CV-14-11                    ✓


STATE OF MAINE,
        Plaintiff,


v.                                              **ORDER ON MOTION TO**
                                                **DIMSISS**


ZEALANDIA HOLDING COMPANY, INC.,
f/k/a FESTIVIA HOSPITALITY GROUP, INC.,
PATTON HOSPITALITY MANAGEMENT, LLC,
f/k/a FESTIVIA MANAGEMENT GROUP, LLC,
FESTIVIA DEVELOPMENT GROUP, LLC,
ZEALANDIA CAPITAL, INC., f/k/a SETI MARKETING, INC.,
RESORT TRAVEL & XCHANGE, LLC,
f/k/a FESTIVIA TRAVEL AND XCHANGE,
FESTIVIA REAL ESTATE HOLDINGS, LLC,
f/k/a FESTIVIA RESORTS, LLC,
FESTIVIA RESORTS ADVENTURE CLUB MEMBERS' ASSOCIATION,
ZEALANDIA HOLDINGS, LLC,
DONALD K. CLAYTON, and HERBERT H. PATRICK, JR.,
        Defendants.


Defendants, Zealandia Holdings, LLC,[1] Zealandia Holding Company, Inc., f/k/a Festivia

Hospitality Group, Inc. ("ZHC"), Donald K. Clayton, and Herbert H. Patrick, Jr. ("Individual

Defendants") move to dismiss the State's complaint for lack of personal jurisdiction pursuant to

M.R. Civ. P. 12(b)(2). ZHC, Clayton and Patrick assert that their contacts with the State of

Maine are insufficient to justify the exercise of either general or specific personal jurisdiction by

Maine courts.

Additionally, Defendants, Patton Hospitality Management, LLC, Festivia Development

Group, LLC, Zealandia Capital, Inc., Resort Travel & Xchange, LLC, Festivia Real Estate

Holdings, LLC, Festivia Resorts Adventure Club Members' Association ("ZHC Subsidiaries")

---

[1] In its Opposition to the Motion to Dismiss, the State agreed to dismiss the Amended Complaint as to
Zealandia Holdings, LLC.

1

moved to dismiss the State's Amended Complaint for failure to plead fraud with particularity pursuant to M.R. Civ. P. 9(b) or, in the alternative, for failing to aver facts and legal theories with sufficient clarity to put Defendants on notice of the claims against them pursuant to M.R. Civ. P. 8(a).

Oral argument on the motions took place on May 29, 2014 where Attorney Eric Wycoff argued on behalf of the Defendants, and Deputy Attorney General Linda Conti argued for the State of Maine.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2014, this action was remanded to the Superior Court from federal court. On February 13, 2014, the State filed an amended complaint, in which the State alleged that Defendants violated the Maine Unfair Practices Act (the "UTPA") by employing various unfair and deceptive practices in the sale and marketing of points-based vacation-club membership. The State alleged that Defendants used unfair and deceptive practices in all of their sales of membership in the Festivia Adventure Club in general, and specifically, in trying to convince: Rangeley Lake Resort timeshare owners to convert to the Festivia Adventure Club membership by transferring their timeshares to a trust owned by and created by Festivia Development Group, LLC and Festivia Resorts Adventure Club Members' Association; and 2) New England consumers who attended Defendants' sales presentations at 190 Riverside Drive, Portland ME to enter Defendants' sweepstakes and eventually become members of the Festivia Adventure Club.

ZHC is the parent holding company at the top of the corporate structure consisting of the ZHC Subsidiaries. Defendants, Clayton and Patrick, are owners, officers, and principals of ZHC and ZHC Subsidiaries. Throughout the Amended Complaint, the State referred to each of the eight corporate entities and two individual Defendants, collectively, as "Defendants." The

2

Amended Complaint asserted nine counts against the "Defendants" collectively, without describing which of the "Defendants" committed which of the alleged acts.

Defendants, ZHC, Clayton, and Patrick assert that this Court does not have personal jurisdiction over them because their contacts with the State of Maine are insufficient. And all of the Defendants are seeking dismissal of the Amended Complaint for failure to comply with the Rule 9(b)'s heightened pleadings standard and for failure to aver facts and legal theories with sufficient clarity to put Defendants on notice of the claims against them.[2]

## STANDARD OF REVIEW

### *Motion to Dismiss for Lack of Personal Jurisdiction*

"Maine's jurisdiction over nonresident defendants is controlled by its long-arm statute," 14 M.R.S. § 704-A (2012), which "is co-extensive with the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1." *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995). Thus, the Court need only "consider whether due process requirements have been satisfied" in addressing the question of personal jurisdiction. *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 4, 711 A.2d 1285.

Personal jurisdiction over a nonresident defendant may be either general or specific; satisfaction of one form of jurisdiction is sufficient to justify the exercise of jurisdiction by Maine Courts. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). "General jurisdiction broadly subjects the defendant to suit in the forum state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Id.* (quotation

---

[2] ZHC, Patrick, and Clayton join in the motion of ZHC Subsidiaries concerning the State's alleged failure to meet the pleading standards.

marks omitted). *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) (distinguishing between general and specific jurisdiction).

Regardless of the type of jurisdiction, the requirements of the due process clause must still be met.

> Due process is satisfied when: (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice.

*Connelly v. Doucette*, 2006 ME 124, ¶ 7, 909 A.2d 221 (quotation marks omitted). The State must satisfy the first two prongs of this test, and then the burden shifts to ZHC, Patrick and Clayton to "demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

Because the Court is proceeding on the motion based upon the pleadings and affidavits, the State needs only make a prime facie showing that jurisdiction exists over Patrick, Clayton, and ZHC, and the Court construes the facts in the State's favor. *See Dorf*, 1999 ME 133, ¶ 14, 735 A.2d 984. Nevertheless, the State's showing must be made on specific facts in the record, going "beyond the pleadings and mak[ing] affirmative proof . . . by affidavit or otherwise." *Id.* ¶ 13; *see also Cossaboon*, 600 F.3d at 31 (discussing plaintiff's burden of proof). For purposes of considering a Rule 12(b)(2) motion the court will accept properly supported proffers of evidence as true. *Tech. Capital, LLC v. Qualtech Networks, Inc.*, 2007 WL 609918 (D. Me. Feb. 15, 2007).

4

*Motion to Dismiss pursuant to M.R. Civ. P. 9(b) and 8(a)*

On a motion to dismiss, facts are not adjudicated. Instead, the court evaluates the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. The court considers the facts stated in the complaint as if they were admitted. *Libner v. Me. Cnty. Comm'rs Ass'n*, 2004 ME 39, ¶ 7, 845 A.2d 570, 572; *Napieralski v. Unity Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A.2d 391, 392. Evaluating the complaint in the light most favorable to the plaintiff, the court determines whether the complaint "sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246.

According to M.R. Civ. P. 8(a), a pleading which sets forth a claim for relief, "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks. Relief in the alternative or of several different types may be demanded." But M.R. Civ. P. 9(b), requires that all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity, while malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*Motion Seeking a More Definite Statement Pursuant to M.R. Civ. P. 12(e)*

Rule 12(e) of Maine Rules of Civil Procedure allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or

ambiguous that the party cannot reasonably prepare a response. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order. M.R. Civ. P. 12(e).

## DISCUSSION

*Motion to Dismiss for Lack of Personal Jurisdiction*

The State concedes that this Court does not have general personal jurisdiction over ZHC, Patrick or Clayton. Thus, the issue before this Court is whether there is specific jurisdiction over these Defendants. Defendants, in turn, do not dispute that Maine has a legitimate interest in the subject matter of the litigation, but assert that neither Patrick, nor Clayton, nor ZHC could have anticipated litigation in Maine and that the exercise of jurisdiction by Maine courts would not comport with traditional notions of fair play and substantial justice. *Connelly v. Doucette*, 2006 ME 124, ¶ 7, 909 A.2d 221 (quotation marks omitted). ZHC, Patrick and Clayton argue that their contacts with Maine are insufficient to hold that they "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Cavers v. Houston McLane Co., Inc.*, 2008 ME 164, ¶ 24, 958 A.2d 905 (quotations omitted).

A defendant's activities are sufficient to establish the requisite minimum contacts when (1) the activities of the defendant have been directed at the forum's residents; (2) the defendant deliberately engages in significant activities in the forum; or (3) the defendant creates continuing obligations between itself and residents of the forum. *Cavers v. Houston McLane Co., Inc.*, 2008 ME 164, ¶ 24, 958 A.2d 905, 911 (citations omitted). The pleadings and affidavits submitted by the parties establish that Defendants have contacts with the State of Maine, which are, in this

Court's opinion, related to the claims made by the State and sufficient to satisfy the second part of the due process analysis.

Clayton and Patrick are each 50% owners of the ZHC stock. In 2008, Patrick and Clayton travelled to Maine in connection with the purchase of the remaining unsold inventory at the Rangeley Lake Resort in Rangeley, Maine. They personally notified the existing Rangeley Lake timeshare owners of the transaction by letter. (Wilkins Aff. ¶ 4, Ex. A.) After it acquired Rangeley Lake Resort's unsold inventory, Festivia began marketing its vacation ownership at the Resort location in Rangeley and at a sales office on Riverside Drive in Portland. Patrick and Clayton were featured (portrait pictures and personal messages) in the marketing materials disseminated in Maine at these sales presentations. (Walker Aff. ¶7 3, 5, Ex. B.)

Patrick was involved in the Rangeley Lake Resort homeowners association. In 2011, he received a deeded timeshare interest at the Rangeley Lake Resort and subsequently served as a member of the board of its homeowners association. (King Aff. ¶¶ 21(d), (e), (f).) He came to Maine to attend several homeowners association board meetings in 2011 and 2012 before selling his timeshare interest at the Resort in November 2013. (Patrick Aff. ¶ 21.)

ZHC has the following contacts with the State of Maine: 1) it is the parent company for ZHC Subsidiaries[3] and owner of a controlling interest in them and 2) prior to May 2013, ZHC was a party to a lease relating to real estate located at 190 Riverside Drive in Portland, Maine.[4]

---

[3] The fact that ZHC Subsidiaries conduct business in Maine is undisputed.

[4] The State alleged existence of additional contacts, which are disputed by Defendants. Specifically, the State presented some evidence of communication between "Festivia Hospitality Group" and "Festivia Adventure Club" and several Maine residents. According to the State, Festivia Hospitality Group, Inc., now known as "ZHC," is equivalent to "Festivia Hospitality Group" and thus, these contacts are attributable to ZHC. However, Defendants assert that "Festivia Adventure Club" is not an entity, but a vacation travel club developed by Festivia Development Group, LLC, one of the ZHC Subsidiaries, the jurisdiction over which is not disputed. According to Defendants, "Festivia Adventure Club" is merely a marketing branding device. Furthermore, according to the affidavit of Richard Hartnett, the Senior VP of Sales for Festivia Development Group, LLC, "Festivia Hospitality Group," although very similar to

The real estate office located at 190 Riverside Drive in Portland, Maine was leased and used for sales presentations intended to induce Maine consumers to become part of the Festivia Adventure Club.

ZHC, Patrick, and Clayton ague that the State's UTPA claim cannot be said to arise out of their contacts with the State of Maine, but the Court concludes otherwise. Being a party to the lease of the sales office in Maine which is used for the sales presentations alleged by the State to be unfair and deceptive is directly related to the cause of action here and is sufficient grounds to anticipate litigation in Maine in relation to these sales presentations. Similarly related to the cause of action is Patrick's and Clayton's involvement in the acquisition and ownership of the Rangeley Lake Resort in Rangeley, Maine, a resort that became one of the destinations available to allegedly deceived Maine Festivia Adventure Club members. Additionally, Patrick and Clayton authorized Patton Hospitality Management, LLC and Festivia Development Group, LLC to use their images and personal statements on the marketing materials in any justification of the United States. Thus, taking the evidence in light most favorable to the State which the Court must do, Patrick and Clayton could reasonably anticipate that these images and personal statements might be featured in the marketing materials distributed in Maine where Festivia, and Patrick personally, purchased a resort destination and where Festivia had a sales office. As a result, Patrick and Clayton could reasonably anticipate litigation in Maine based on allegations that these marketing materials are unfair or deceptive. *See Carbonara v. Olmos*, 1994 WL 370031 (C.D. Cal. Mar. 4, 1994) (noting that defendants' alleged consent, given in some manner,

---

ZHC's former name—Festivia Hospitality Group, Inc.—is similarly not an entity, but also a marketing a branding tool used to draw attention to the fact that membership in the Club is more than a way to acquire accommodations. (Hartnett Aff. ¶ 18.) Thus, according to Defendants, these communications with the State's affiants have no connection with ZHC.

to the use of their likenesses in the forum state to solicit business constitutes the minimal contacts sufficient to establish "specific" personal jurisdiction over defendants).[5]

Finally, Defendants, ZHC, Patrick and Clayton failed to meet their burden of demonstrating that personal jurisdiction over them in Maine does not comport with traditional notions of fair play and substantial justice. In deciding whether a defendant satisfied the third part of the due process analysis, the Court must consider "a variety of factors including the nature and purpose of defendant's contacts with [Maine], the connection between the contacts and the cause of action, the number of contacts, the interest of [Maine] in the controversy, and the convenience and fairness to both parties." *Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 28, 16 A.3d 137, 147 (citing *Cavers,* 2008 ME 164, ¶ 36, 958 A.2d at 913).

First, as noted above, the Defendants do not challenge the legitimacy of Maine's interest in this controversy. Second, as noted above, ZHC's, Patrick's and Clayton's contacts with Maine, although arguably not numerous, are directly related to the sales of membership in the Festivia Adventure Club, which are the subject of this lawsuit. Lastly, besides the fact that ZHC is a Nevada corporation with a principal place of business in North Carolina, and that Patrick and Clayton are citizens of North Carolina, Defendants failed to produce any evidence showing that it would be so inconvenient for them to be forced to come to court in Maine such that "traditional notions of fair play and substantial justice" would be offended. *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 15, 855 A.2d 1150, 1156. On the other hand, Maine is a convenient forum for ZHC Subsidiaries, where they are authorized and in fact do business, and for important witnesses in this case—Maine consumers who were allegedly deceived by Defendants' conduct.

---

[5] Because this court finds that ZHC's, Patrick's and Clayton's contacts with Maine are sufficient, it will not address the State's argument that ZHC Subsidiaries' contacts with Maine should be imputed to Defendants, ZHC, Clayton and Patrick.

*Motion to Dismiss pursuant to M.R. Civ. P. 8(a) and 9(b)*

In their motion to dismiss pursuant to M.R. Civ. P. 9(b), Defendants argue that the State's allegations sound in fraud, so they must conform to Rule 9(b)'s heightened pleading standard. According to Defendants, the State failed to comply with that standard and for that reason its Amended Complaint should be dismissed. As a threshold matter, then, this Court must decide whether Rule 9(b) applies to the State's claims under the UTPA.

The Law Court has not yet addressed the issue of whether claims under the UTPA should be subject to Rule 9(b)'s heightened pleadings standard. Jurisdictions that have addressed the issue generally focus their analysis on whether their consumer protection statutes require proof of fraud and mistake and disagree on whether rule 9(b) should apply to actions brought under consumer protections statutes similar to the UTPA.

For example, in *Russo v. NCS Pearson, Inc.*, the court applied Rule 9(b)'s heightened pleadings standard to an individual plaintiff's claim under Minnesota False Statement in Advertising statute, M.S.A. § 325F.67, on the ground that the gravamen of the complaint was fraud. 462 F. Supp. 2d 981, 1003 (D. Minn. 2006). In *Jackson v. Philip Morris Inc.*, the court applied rule 9(b) to plaintiff's claim under Utah Consumer Sales Practices Act. 46 F. Supp. 2d 1217, 1222 (D. Utah 1998). However, in *dicta*, the court explained that under § 13–11–4(2) of the Act, a supplier cannot be found to have committed a deceptive act or practice unless done *knowingly or intentionally. Id.* "Such scienter requirement only serves to bolster the need for broad application of Rule 9(b) when claims of deception [under the Act] are raised." *Id.* at 1223 n.2. In *Burton v. R.J. Reynolds Tobacco Co.*, the court held that allegations of deceptive trade practices under Kansas Consumer Protection Act are subject to Rule 9(b)'s requirement of

10

particularity because the elements of an action under the KCPA are identical to fraud actions *except for* the intent requirement. *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995).

On the other hand, Rule 9(b) does not apply to the consumer protection statutes of New York, Florida, Nebraska, New Hampshire, Connecticut, Texas and Delaware. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under [New York's Consumer Protection Act] is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ. P."); *Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co., Ltd.*, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) ("Rule 9(b) does not apply to [the plaintiffs' Florida Deceptive and Unfair Trade Practices] claim because plaintiffs do not need to prove fraud to prevail."); *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ("[I]n light of the similarities between the [New York's Consumer Protection Act] and the analogous New Hampshire and Texas statutes, the Court finds that the applicable pleading standard to claims under all three statutes is the notice pleading requirements of Rule 8(a)); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) ("CUTPA claims brought in federal court only must satisfy Rule 9(b) if such claims are based on fraud allegations."); *State ex re. Brady v. Publishers Clearing House,* 787 A.2d 111, 118 (Del. 2001) ("Court of Chancery Rule 9(b) is inapplicable to actions brought by the Attorney General under the Consumer Fraud Act and the Deleware Uniform Deceptive Trade Practices Act."). And most importantly, Rule 9(b) does not apply to G.L. c. 93A, the Massachusetts version of Maine's UTPA, which served as a prototype for Maine's consumer protection statute. *See Hoglund ex rel. Johnson v. DiamlerChrysler Corp.*, 102 F. Supp. 2d 30, 31 (D. Me. 2000) (noting that Massachusetts version of the Unfair Trade

Practices Act was a prototype for Maine's UTPA and that the Law Court looked repeatedly to that law for guidance). In *U.S. Funding, Inc. of America v. Bank of Boston Corp.*, the court held that while Mass. R. Civ. P. 9(b) requires specification of circumstances in "averments of fraud, mistake, duress or undue influence," the concept of "unfair or deceptive acts or practices" made actionable by G.L. c. 93A "goes far beyond the scope of the common law action for fraud and deceit," and does not necessarily require similar pleading specificity. 28 Mass. App. Ct. 404, 407, 551 N.E.2d 922, 925 (1990) (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703, 322 N.E.2d 768 (1975)).

Similarly, to G.L. c. 93A, Maine's UTPA goes beyond the scope of the common law action for fraud. To succeed on a claim under the UTPA, a plaintiff must show that the defendant committed unfair or deceptive acts or practices in the conduct of any trade or commerce. 5 M.R.S.A. § 207. To justify a finding of unfairness under the UTPA, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition. *State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200. An act or practice is deceptive if it is (1) a material representation, omission, act or practice that is (2) likely to mislead consumers acting reasonably under the circumstances. *Id.* ¶ 17. An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's good faith or lack of intent to deceive. *Id.*

Thus, it appears that a claim of *unfair* practices under the UPTA does not have common elements with a claim of fraud except for "injury" to consumers, and a claim of *deceptive* practices, unlike a claim of fraud,[6] does not require proof of either knowledge or intent and, at

---

[6] In Maine, common law fraud has the following elements: (1) the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or

12

least in some circumstances, does not require proof of reliance. *See McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) (holding that generally, liability under the FTCA, which guides interpretation of the UTPA, is predicated upon certain misrepresentations or misleading statements, coupled with action taken in reliance upon those statements, however, proof of individual reliance by each purchasing customer is not a prerequisite to the provision of equitable relief). Moreover, in *State v. Bob Chambers Ford, Inc.*, the Law Court specifically held that neither section 207(1) of the UTPA, nor section 209, which allows the Attorney General to seek relief for violations of section 207, has an intentional fraud requirement. 522 A.2d 362, 365 (Me. 1987). Thus, just like Mass. R. Civ. P. 9(b) does not apply to claims under G.L. c. 93A because they go beyond the scope of the common law action for fraud and deceit, claims under the UTPA do not necessarily require pleading specificity because the UTPA provides a remedy for a wider range of business conduct than does common law fraud.

Furthermore, pursuant to section 207 of the UTPA, in construing the UTPA, courts should be guided by interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act (15 United States Code 45(a)(1)). 5 M.R.S. § 207. Federal courts have repeatedly held that claims brought under the Federal Trade Commission Act are not necessarily subject to Rule 9(b). For example, in *F.T.C. v. Freecom Communications, Inc.*, the court held that a section 45 claim "simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." 401 F.3d 1192, 1204 n.7 (10th Cir. 2005). *See also F.T.C. v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *7 (E.D.N.Y. May 23, 2012) (noting that if it were to reach the issue of whether claims brought under Section 45 of the F.T.C. Act are subject to Rule 9(b), it would conclude

false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage. *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771 (citations omitted).

that they were not). Thus, based also on guidance from the federal courts, Rule 9(b) should not automatically apply to claims under Maine's UTPA.

This Court also disagrees with Defendants that the reasoning in *Everest v. Leviton Manufacturing Co.*, a Superior Court case, is applicable here. 2006 WL 381832 (Me. Super. Jan. 13, 2006). In *Everest*, the court held that because plaintiff's claim under the UTPA was premised on fraud, it must be pled with particularity pursuant to M.R. Civ. P. 9(b). But the complaint in *Everest* is distinguishable from the State's Amended Complaint.

First, while the Amended Compliant was brought by the State under sections 209 and 213, the *Everest* complaint was brought by a private individual pursuant to section 213 of the UTPA, which was added to the Act to give a private right of action to consumers. Unlike sections 207 and 209, which are generally liberally construed to effectuate their "beneficent" purposes, *State v. DeCoster*, 653 A.2d 891, 897 (Me. 1995), section 213 of the UTPA, historically, has been interpreted by the Law Court narrowly. *Hoglund ex rel. Johnson v. DiamlerChrysler Corp.*, 102 F. Supp. 2d 30, 31 (D. Me. 2000) (citing *Bartner v. Carter,* 405 A.2d 194, 202-03 (Me.1979)). Second, the *Everest* complaint alleged that Defendant, a manufacturer of electrical receptacles, acted "*fraudulently*," in that it either knew or should have known that the receptacles were dangerously defective, yet "*purposefully*" failed to inform consumers of the dangers of the product, and represented the quick-wire receptacles to be as safe as other receptacles. 2006 WL 381832, at *1. For this allegedly fraudulent conduct, the plaintiff in *Everest* sought punitive, restitution and compensatory damages only. He did not seek injunctive relief. Based on the plaintiff's allegations and types of relief sought, the court in *Everest* treated the complaint as a claim of fraud and consequently, required plaintiff plead/prove reliance.

Here, because the State alleges violations of 5 M.R.S. § 207 only, it may and did avoid altogether any allegations of scienter or reliance. Although the Amended Complaint does assert that Defendants made statements that were deceptive, those allegations cannot be thought to constitute "averments of fraud," absent any claim of scienter and reliance. Otherwise, any allegation of deception, or nondisclosure of material information would be transformed into a claim of fraud and subjected to Rule 9(b)'s heightened pleadings standard. *Compare Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) (refusing to apply Rule 9(b) to a complaint arising out of violations of Section 11 and 12(2) of the Securities Act of 1933 and containing claims that defendants knowingly failed to disclose material information) (superseded by statute on other grounds), *with Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (notwithstanding the relative breadth of the consumer protection statutes, applying Rule 9(b) to a complaint containing claims of fraud and violation of unlawful and deceptive trade practices states because the gravamen of the complaint was fraud). That said, the Court acknowledges that a complaint alleging violations of the UTPA may nevertheless "sound in fraud," so as to trigger the requirements of Rule 9(b) when fraud lies at the "core of the action." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *Declude, Inc. v. Perry*, 593 F. Supp. 2d 290, 297 (D. Mass. 2008) ("[A]ny claim sounding in fraud must satisfy the requirements of the heightened pleading standard regardless of what label the pleader assigns to it.") But that is not the case here.

Because this Court construes the Amended Complaint as alleging unfair and deceptive practices short of fraud, it does not need to satisfy Rule 9(b) and cannot be dismissed on the ground that it has not pled its allegations with particularity.

Defendants further argue that even if Rule 9(b) does not apply to the Amended Complaint, it should nevertheless be dismissed for failure to comply with Rule 8(a). Pursuant to Rule 8(a), a pleading "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks." M.R. Civ. P. 8(a). Defendants argue that this Court should dismiss the Amended Complaint because the State failed to aver facts and legal theories with sufficient clarity.

Defendants Clayton and Patrick argue that any claims against them should be dismissed because the State failed to sufficiently allege that they personally had violated the UPTA. They purport that the State's theory of liability against them relies on conclusory statements that Clayton and Patrick: (1) "formulated, directed, controlled, had the authority to control, or participated in, and had knowledge of, the acts and practices set forth in th[e] Complaint" and (2) are "an alter ego of the Corporate Defendants." And ZHC argues that the State cannot rely on the "common enterprise doctrine" to justify failure to make specific allegations as to each Corporate Defendant or to hold ZHC liable for the conduct of its subsidiaries because the doctrine is inapplicable to claims under the UTPA.

For purposes of a rule M.R. Civ. P. 12(b)(6) motion, the complaint is examined in the light most favorable to the plaintiff to determine whether it alleges elements of a cause of action or facts entitling the plaintiff to relief on some legal theory. *State of Maine v. Catherine Duffy Petit*, 1997 WL 35018763 (Me. Super. Aug. 5, 1997). It should not be dismissed unless it is beyond doubt that no relief can be granted on any facts that might be proven to support the plaintiff's claim. *Id.* Here, the State articulated legal theories based on which a relief may be sought from Defendants, Clayton, Patrick, and ZHC for violations of the UTPA.

With respect to Patrick and Clayton, the State's allegations and affidavits in opposition to this motion set out grounds for "piercing the corporate veil" sufficient to survive a motion to dismiss. *See Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200. *See also Blue Star Corp. v. CKF Properties, LLC*, 2007 WL 4698291 (Me. Super. Oct. 31, 2007) (discussing pleading principal's liability in general).

Corporations are generally treated as separate legal entities with limited liability, but courts may disregard the corporate entity, "when used to cover fraud or illegality, or to justify a wrong." *Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200 (citing *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n. 5 (Me.1981)). A court may pierce the corporate veil if a plaintiff establishes that: "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Id.* (quoting *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568, 571). *See also Blue Star Corp.*, 2007 WL 4698291 ("[A] plaintiff must show '(1) some manner of dominating, abusing, or misusing the corporate form; and (2) an unjust or inequitable result that would arise if the court recognized the separate corporate existence' in order to pierce the corporate veil.") (quotations omitted)). In deciding whether an unjust result would arise, the Court may look to the evidence of whether the corporation was undercapitalized, insolvent, or bankrupt. *Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶ 12, 901 A.2d 189, 195.

At the motion to dismiss stage, the courts, generally, will not dismiss a complaint against the principal if it alleges that the principal personally and actively participated in the deceptive or unfair conduct. *See, e.g., Weinschenk*, 2005 ME 28 (affirming the trial court's decision to hold the principal liable where he personally engaged in direct dealings with buyers and designed homes found to be defective); *Blue Star Corp.*, 2007 WL 4698291 (refusing to dismiss a

17

complaint against the principal where he personally negotiated and signed the agreement, which he allegedly knew to contain a provision that the corporation would not be able to comply with).

At the later stages of litigation, the courts draw a distinction between how much a plaintiff is required to show to be entitled to restitution damages rather than solely injunctive relief from the principal. In *F.T.C. v. American Standard Credit Systems*, the court stated that to be entitled to injunctive relief, a plaintiff must show only that the principal of the corporation either participated in deceptive acts or practices, or that he had control over them. 874 F. Supp. 1080, 1089 (C.D. Cal. 1994) (addressing a summary judgment motion, not a motion to dismiss). Authority to control the corporation can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer. *Id.* However, to be entitled to restitution, a plaintiff must also show that the principal had knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted. *Id.* (citations omitted). But a decision on whether the State carried out this burden of proof is premature at the motion to dismiss stage, where only the sufficiency of the pleading is challenged.

As the Court stated above, the basic pleading requirement of M.R. Civ. P. 8 applies to the case at bar. The State complied with the Rule 8's requirement and presented a *"short and plain statement of the claim,"* *i.e.* that Patrick and Clayton are "owner[s], officer[s], and principal[s] of the Corporate Defendants," that they personally "formulated, directed, controlled, had the authority to control, or participated in, and had knowledge of, the acts and practices set forth in th[e] Complaint," and that they are "an alter ego of the Corporate Defendants." These statements are sufficient to put individual Defendants on notice that the State intends to seek the equitable

18

remedy of piercing the corporate veil to hold them liable for violations of the UTPA.[7] (Am. Compl. ¶¶ 11-12.) *See also Johnston v. Maine Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741 ("Maine is a notice pleading state, and only 'requires a short and plain statement of the claim to provide fair notice of the cause of action,' . . . a complaint need not identify the particular legal theories that will be relied upon.") (quotations omitted).

Moreover, as long as the Amended Complaint alleges something to show that the State is entitled to relief from Patrick and Clayton, the State will be allowed to conduct discovery to establish whether Clayton and Patrick are alter egos for the corporate Defendants. *See Blue Star Corp.*, 2007 WL 4698291 (where the Court allowed plaintiff to proceed with its complaint and establish individual defendant's liability through discovery, even though it was not clear from the pleading whether plaintiff would be able to recover personally from the principal based on the principles of corporate veil piercing). In sum, the language of the Amended Complaint satisfies the bare-bone requirement of Rule 8(a) with respect to Patrick and Clayton.

With respect to ZHC's liability, the Amended Complaint alleges that Corporate Defendants "have operated as a common enterprise while engaging in unfair and deceptive acts and practices alleged in this Complaint." (Am. Compl. ¶ 13.) ZHC argues that State cannot rely on the "common enterprise doctrine" to justify failure to make specific allegations as to each Corporate Defendant or to hold ZHC liable for the conduct of its subsidiaries because the common enterprise doctrine is a federal common law theory of liability that has not been explicitly adopted by the courts of Maine.

This Court has concluded that a decision on whether "common enterprise" doctrine applies to claims under the UTPA is premature at the motion to dismiss stage. The Amended

---

[7] There is also a dispute as to the laws of which state should govern the question of whether the Court should pierce the corporate veil.

Complaint complied sufficiently with the notice requirement of Rule 8 by identifying a theory on which it intends to hold ZHC liable at a later stage of this litigation.

***Defendants' Motion Seeking a More Definite Statement Pursuant to M.R. Civ. P. 12(e)***

Finally, Defendants request that this Court order the State to provide a more definite statement of each Defendant's allegedly wrongful conduct. Presently, the Amended Complaint refers to each of the eight corporate entities and two individual Defendants, collectively, as "Defendants" and asserts nine counts against the "Defendants" collectively, without describing which of the "Defendants" committed which of the alleged acts.

It is not as a rule impermissible to incorporate prior allegation paragraphs into subsequent paragraphs for efficiency sake, but if the incorporation is so wholesale that it is evident that the plaintiff made no effort to discern which defendants might fairly be held liable for which counts based on what alleged facts, it will arise to the level of a "shotgun" pleading. *Ames v. Dep't of Marine Res. Comm'r*, 256 F.R.D. 22, 29 n.6 (D. Me. 2009). In *Ames*, the court's decision to require the plaintiff to file a more definitive statement was based on the fact that it was clear from the record that some of the defendants would be forced to respond to allegations of the complaint without clarity as to the portions of the complaint that targeted them specifically. *Id.* at 30. Defendants argue that similarly in this case, because even according to the State itself, certain acts were committed only by a limited number of Defendants, it would be unduly burdensome and likely unnecessary to force each of the eight corporate entities and two individual Defendants to answer all nine counts of the Amended Complaint.

The State accurately points out that motions for a more definite statement are not favored "in light of the availability of pretrial discovery procedures." *Haghkerdar v. Husson Coll.*, 226 F.R.D. 12, 13-14 (D. Me. 2005) (quoting *Cox v. Maine Mar. Acad.*, 122 F.R.D. 115, 116

(D.Me.1988)). And that Rule 12(e) motions are designed to "strike at unintelligibility, rather than at lack of detail in the complaint." *Id.* (quoting *Cox,* 122 F.R.D. at 116). Nonetheless, during oral argument, counsel for the State represented that it could, albeit with some difficulty, re-plead the State's allegations in a manner that would clarify which alleged acts are applicable to which Defendants. Accordingly, provided that the State can do so consistent with Rule 8 and 12(e), the State will be ordered to provide a more definitive statement.

The entry will be:

Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED.** Their motion to dismiss pursuant to M. R. Civ. P. 9(b) and 8(a) is **DENIED**. Their motion for a more definite statement pursuant to M.R. Civ. P. 12(e) is **GRANTED**. The Amended Complaint, at the request of the Plaintiff, is dismissed as against Zealandia Holdings, LLC.

_____6 | 16 | 14_____

**DATE**

_____

**SUPERIOR COURT JUSTICE, BUSINESS AND CONSUMER COURT**

Entered on the Docket: 6/17/14
Copies sent via Mail___ Electronically ✓

21

**State of Maine v. Zealandia Holding Company, Inc., f/k/a Festivia Hospitality Group, Inc., Patton Hospitality Management, LLC, f/k/a Festiva Management Group, LLC, Festivia Development Group, LLC, Zealandia Capital, INC., f/k/a Seti Marketing, Inc., Resort Travel & Xchange, Festivia Real Estate Holdings, LLC, f/k/a Festivia Travel and Xchange, Festivia Real Estate Holdings, LLC, f/k/a Festivia Resorts, LLC, Festivia Resorts Adventure Club Members' Association, Zealandia Holdings, LLC, Donald K. Clayton, and Herbert H. Patrick, Jr.**
**BCD-CV-14-11**


**State of Maine**
  **Petitioner / Plaintiff**

        Counsel:                  Linda Conti, AAG
                                  6 State House Station
                                  Augusta, ME 04333-0006

**Zealandia Holding Company, Inc., f/k/a Festivia Hospitality Group, Inc., Patton Hospitality Management, LLC, f/k/a Festiva Management Group, LLC, Festivia Development Group, LLC, Zealandia Capital, INC., f/k/a Seti Marketing, Inc., Resort Travel & Xchange, Festivia Real Estate Holdings, LLC, f/k/a Festivia Travel and Xchange, Festivia Real Estate Holdings, LLC, f/k/a Festivia Resorts, LLC, Festivia Resorts Adventure Club Members' Association, Zealandia Holdings, LLC, Donald K. Clayton, and Herbert H. Patrick, Jr.**
  **Respondents / Defendants**

        Counsel:                  Eric Wycoff, Esq.
                                  Merrills Warf
                                  254 Commercial St.
                                  Portland, ME 04101

                                  and

                                  Christian Chandler
                                  One Canal Plaza Suite 1000
                                  PO BOX 7320
                                  Portland, ME 04112-7320